UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ELECTRICAL WORKERS PENSION FUND, :
LOCAL 103, I.B.E.W., On Behalf Of Itself :
And All Others Similarly Situated, :
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　Plaintiff, :
　　　　　　　　　　　　　　　　　　　　　　　　　　:　　**07 Civ. 975 (HB)**
　　　　　　- against - :
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
NUVELO, INC., TED W. LOVE, GARY S. TITUS, :
and SHELLY D. GUYER, :
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　Defendants. :
-------------------------------------------------------------x
BARRY LOGAN, :
Individually and On Behalf Of Himself and All Others :
Similarly Situated, :
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　Plaintiff, :
　　　　　　　　　　　　　　　　　　　　　　　　　　:　　**07 Civ. 1229 (HB)**
　　　　　　- against - :
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
NUVELO, INC., TED W. LOVE, GARY S. TITUS, :
and SHELLY D. GUYER, :
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　Defendants. :
-------------------------------------------------------------x
ARNOLD GILES, :
Individually and On Behalf Of Himself and All Others :
Similarly Situated, :
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　Plaintiff, :
　　　　　　　　　　　　　　　　　　　　　　　　　　:　　**07 Civ. 1777 (HB)**
　　　　　　- against - :
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
NUVELO, INC., TED W. LOVE, GARY S. TITUS, :
and SHELLY D. GUYER, :
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　Defendants. :
-------------------------------------------------------------x

1

```
------------------------------------------------------------x
HERBERT BRAKER,                                             :
Individually and On Behalf Of Himself and All Others        :
Similarly Situated,                                         :
                                                            :
                         Plaintiff,                         :
                                                            :   07 Civ. 1953 (HB)
            - against -                                     :
                                                            :   **JOINT OPINION**
                                                            :   **AND ORDER**
                                                            :
NUVELO, INC., TED W. LOVE, GARY S. TITUS,                   :
and SHELLY D. GUYER,                                        :
                                                            :
                         Defendants.                        :
------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., District Judge:**

Defendants Nuvelo, Inc. ("Nuvelo") and three of Nuvelo's individual officers and directors, Ted Love, Gary Titus, and Shelly Guyer (collectively, "Defendants") move to transfer venue over these four putative securities class actions to the Northern District of California.[1] Plaintiffs Electrical Workers Pension Fund, *et. al.* ("Plaintiffs") oppose.

For the reasons articulated below, Defendants' motion to transfer venue is GRANTED.

## I.   BACKGROUND

### A.  Underlying Facts of Action

Nuvelo is a biopharmaceutical company, incorporated in Delaware and headquartered in San Carlos, CA, near Silicon Valley. See Affidavit of Shelly D. Guyer in Support of Defendants' Motion to Transfer Venue, Apr. 18, 2007 ("Guyer Aff."), ¶ 5; Complaint, Logan v. Nuvelo, 07-cv-1229, ¶ 11.

On January 5, 2006 (the beginning of the Class Period), Nuvelo announced a partnership with the company Bayer Health Care AG regarding "alfimephrase," Nuvelo's new drug in development that is designed to dissolve blood clots. Complaint ¶¶ 36-37.

---

[1] Four Nuvelo-related securities class actions before this Court are at issue in this motion – *Electrical Workers v. Nuvelo*, 07-cv-975 (S.D.N.Y); *Logan v. Nuvelo*, 07-cv-1229 (S.D.N.Y.); *Giles v. Nuvelo*, 07-cv-1777 (S.D.N.Y.); and *Braker v. Nuvelo*, 07-cv-1953 (S.D.N.Y.)  The parties have agreed to delay this Court's consideration of Plaintiffs' motions to consolidate the four cases and appoint Lead Plaintiffs, as if the case is transferred, it may be more appropriate to let the transferee rule on those issues.

Citations in this Opinion will be to documents filed in connection with *Electrical Workers v. Nuvelo*, 07-cv-975, unless otherwise noted.

2

Nuvelo announced that Bayer would pay it $50 million up front, and potentially up to $335 million in additional payments, in exchange for the right to commercialize alfimephrase outside the United States. Id. at ¶ 36. Defendants allegedly stated in a conference call that they anticipated the "alfimephrase" drug would win FDA approval and thus reach the U.S. consumer market by 2008. Id. at ¶ 15. Nuvelo's CEO Ted Love allegedly predicted that the drug would generate $500 million in annual sales. Id. Nuvelo's stock price rose. Id.

On January 30, 2006, Nuvelo conducted a "follow-on" stock offering that raised over $119 million for the company. Complaint ¶ 16. Nuvelo's underwriters for this offering were JP Morgan, Lehman Brothers, and Deutsche Bank. Id. at ¶¶ 16, 26.

Over the next several months, Nuvelo embarked on Phase III clinical trials to test alfimephrase. Complaint ¶ 19. Nuvelo also made several public statements regarding alfimephrase. Some statements were in the form of press releases issued from Nuvelo's California headquarters. See generally Complaint ¶¶ 36-56; Guyer Aff. ¶ 6; Affidavit of Gary S. Titus in Support of Defendants' Motion to Transfer Venue, Apr. 18, 2007 ("Titus Aff.") ¶ 6. Some statements were allegedly made at presentations at approximately eight analysts' and investors' conferences in New York. See Declaration of David A. Rosenfeld In Support of Plaintiffs' Opposition…, May 4, 2007 ("Rosenfeld Decl."), ¶ 2, Ex. A.

On December 11, 2006 (the end of the Class Period), Nuvelo announced that two Phase III trials (in technical terms, the "NAPA-2" and "SONOMA-2" trials) did not go as well as they hoped (or in Plaintiff's words, "failed"). See Complaint ¶¶ 56, 63. The company disclosed that prior clinical trials did not involve the use of a placebo; that any past effectiveness of the drug was not due to the drug itself, but other factors; and that other Phase III clinical trials (in technical terms, the "NAPA-3" and "SONOMA-3" trials) would be put on hold. See Memorandum of Law in Opposition…, May 4, 2007 ("Pl. Opp."), at 4; Complaint ¶ 56. Nuvelo's stock dropped nearly 80%, from $19.55 to $4.05. Complaint ¶¶ 57, 64.

B. Facts Relating to Defendants' Motion to Transfer Venue

Nuvelo avers that the vast majority of operative facts, witnesses, and documents that relate to this litigation are located in the Northern District of California. Nuvelo does

3

not have operations, offices, or employees in New York. Guyer Aff. ¶ 5; Titus Aff. ¶ 5. Nuvelo states that the three individual defendants, its senior management, its officers, and the vast majority of its employees are located at, or near, its headquarters in California. Guyer Aff. ¶¶ 5-6; Titus Aff. ¶ 5-6. Nuvelo states that the individual employees who helped prepare the press releases at issue are located at its headquarters in California, and that the press releases were issued from its headquarters. Guyer Aff. ¶ 6; Titus Aff. ¶ 6. Nuvelo states that the officers and employees that designed and analyzed the NAPA-2 and SONOMA-2 clinical studies at issue are all located at its headquarters in California. Id. Nuvelo states that most of the relevant documents are either located at its headquarters or at a separate warehouse in Union City, CA. Guyer Aff. ¶ 7.

Plaintiffs aver that Nuvelo or (it is not entirely clear) the individual Defendants made presentations at approximately eight analysts' and investors' conferences in New York during the Class Period, during which they made statements about the drug alfimephrase. See Rosenfeld Decl. ¶ 2, Ex. A. Plaintiffs do not at this time specifically identify those particular statements in their Complaint.[2]

Plaintiffs also note that Defendants' underwriters for their follow-on stock offering (before which, Plaintiffs allege, Defendants made false statements about the drug in order to raise additional funds) all have offices in New York. Complaint at ¶¶ 16, 26. Nuvelo rebuts that its primary contacts at two of these three underwriters, including JP Morgan, its lead underwriter, worked out of San Francisco, not New York. Guyer Reply Aff. ¶ 3.

Lastly, Plaintiffs note that one of Nuvelo's Phase III clinical trials took place in the Bronx, two other trials took place in New Jersey, and one trial took place in Pennsylvania. See Rosenfeld Decl., Ex. D. Nuvelo, however, points out that these particular trials in New York, New Jersey, and Pennsylvania were in fact the NAPA-3 and SONOMA-3 trials – not the failed NAPA-2 and SONOMA-2 trials which engendered this lawsuit. See Guyer Aff., Ex. G; Complaint ¶ 56; Rosenfeld Decl., Ex. D.

Plaintiffs do not allege in their papers before me that any of the class plaintiffs reside in New York.

---

[2] Plaintiffs aver that after the Court appoints a Lead Plaintiff, that Plaintiff will file a consolidated amended complaint which will include a more comprehensive list of allegedly materially false and misleading statements. See Pl. Mem. Opp. at 7 n.6.

4

## II. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006); see generally, e.g., Montgomery v. TAP Enters., 2007 U.S. Dist. LEXIS 12702, at *6-8 (S.D.N.Y. Feb. 26, 2007) (Baer, J.).

A motion to transfer pursuant to § 1404(a) rests within the "sound discretion" of the district court. Schwartz v. R.H. Macy's, Inc., 791 F. Supp. 94 (S.D.N.Y. 1992). The burden is on the movant to establish that there should be a change of forum. Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978); see also Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, 829 F. Supp. 62, 66 (S.D.N.Y. 1993) (movant must make "clear and convincing showing"). Although the plaintiff's choice of forum is entitled to substantial weight, this presumption is reduced if the cause of action bears "little material connection" to the chosen forum. See, e.g., St. Regis Mohawk Tribe v. State of New York, 774 F. Supp. 185, 189 (S.D.N.Y. 1991); see also Arrow Electronics Inc. v. Ducommun, Inc., 724 F. Supp. 264, 265 (S.D.N.Y. 1991) (where the facts of the action bear little connection to the chosen forum, "plaintiff's choice is given reduced significance"). This presumption is reduced further in class actions, particularly securities class actions. See In re AtheroGenics Sec. Litig., 2006 U.S. Dist. LEXIS 15786, at *9 (S.D.N.Y. 2006) (Holwell, J.) ("AtheroGenics").

## III. DISCUSSION

When evaluating a motion to transfer, a court should consider the following factors: (1) the convenience of witnesses; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of relevant documents and relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances.[3] See, e.g.,

---

[3] To succeed on a motion to transfer venue, Defendant must as a threshold matter establish that the action could have been brought in the proposed transferee district. See, e.g., Montgomery v. TAP Enters., 2007 U.S. Dist. LEXIS 12702, at *9 n.6, citing Van Dusen v. Barrack, 376 U.S. 612 (1964). Secondly,

5

Anadigics, Inc. v. Raytheon Co., 903 F. Supp. 615, 617 (S.D.N.Y. 1995). "The convenience of the witnesses and the parties are generally considered as the most important factors in a transfer application." D'anton Jos, S.L. v. Doll Factory, 937 F. Supp. 320, 322 (S.D.N.Y. 1996); see also Hubbell Inc. v. Pass & Seymour, 883 F. Supp. 955, 962 (S.D.N.Y. 1995) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses.").

I will address the most relevant factors first.

A. Plaintiff's Choice of Forum

A plaintiff's choice of forum "is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." AtheroGenics, 2006 U.S. Dist. LEXIS 15786, at *9, citing Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). However, "while it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in stockholder class actions." Id., citing, e.g., Eichenholtz v. Brennan, 677 F.Supp. 198, 202 (S.D.N.Y. 1988) (in a securities class action, there will be "numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited," and thus plaintiff's choice receives less deference); but see In re Geopharma Sec. Litig., 2005 U.S. Dist. LEXIS 8885, at *3-4 (S.D.N.Y. 2005) (Scheindlin, J.) ("Geopharma") ("affording less deference to representative plaintiffs does not mean they are deprived of all deference.").

Here, in this securities class action, plaintiff's choice of forum is entitled to less deference. Indeed, there is no allegation that any of the class plaintiffs reside in New York, such that those plaintiffs might be prejudiced by transfer. Even leaving the question of deference to plaintiff's choice of forum aside, there remains ample support to rule in favor of transfer based on the other factors, as further articulated below.[4]

---

Defendant must "demonstrate that the balance of the convenience of the parties and witnesses and the interests of justice are in [his] favor." See Consol. Metal Prods., Inc. v. Am. Petroleum Inst., 569 F.Supp.773, 774 (D.D.C. 1983). Because it is undisputed here that these actions could have been brought in the proposed transferee district (i.e. the Northern District of California), the first inquiry does not require examination.

[4] See Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb, 2006 U.S. Dist. LEXIS 36018, at *13-14 (S.D.N.Y. 2006) (Baer, J.) ("Bausch & Lomb") ("Defendants argue… that courts have accorded 'little weight' to plaintiff's choice of forum in securities class actions… Whether that's so or not here, the other factors are persuasive.").

6

B.  <u>Convenience of Parties</u>

Defendants Nuvelo, and the three individual Defendants, all reside in the Northern District of California.  Guyer Aff. ¶¶ 5-6; Titus Aff. ¶ 5-6.  As noted above, it appears no class plaintiffs reside in this District.  This factor favors transfer.

C.  <u>Convenience of Witnesses and Availability of Process</u>

Defendants argue the vast majority of witnesses aside from the individual Defendants (i.e. Nuvelo employees and ex-employees) are all located in California, and that process would not be available to compel their testimony in New York, were the actions to proceed to trial here.

Plaintiffs aver that some non-party witnesses are located in New York.  For example, Plaintiffs argue that Nuvelo's underwriters are located in New York.  Defendants rebut, however, that the primary contacts for two out of three of Nuvelo's underwriters, including its lead underwriter, JP Morgan, are in fact located in San Francisco.  <u>See</u> Guyer Reply Aff. ¶ 3.  Plaintiffs also aver that securities analysts that follow Nuvelo are located in New York.  Defendants rebut, however, that three of the analysts who follow Nuvelo are also based in San Francisco.  <u>See</u> Guyer Reply Aff. ¶ 4.  To the extent that Plaintiffs seek to call underwriters and securities analysts at trial, it is doubtful Plaintiffs will experience any prejudice by transfer.

Plaintiffs also aver that some non-party witnesses are located *near* (albeit not *in*) New York.  For example, Plaintiffs aver that Bayer's United States corporate headquarters is located in Pittsburgh, and its pharmaceutical division is located in West Haven, CT.  See Pl. Mem. Opp. at 10.  Additionally, Plaintiffs aver that FDA employees are located in Washington, DC.  <u>See</u> <u>Geopharma</u>, 2005 U.S. Dist. LEXIS 8885, at *7 (noting that <u>inter alia</u>, FDA employees are located in Washington, DC, and calling this factor "neutral").  Typically, however, district courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum.  <u>See</u>, <u>e.g.</u>, <u>AtheroGenics</u>, 2006 U.S. Dist. LEXIS 15786, at *15, <u>citing</u> <u>Wechsler v. Macke Int'l Trade, Inc.</u>, 1999 WL 1261251, at *6 (S.D.N.Y. 1999) ("The Court dismisses from consideration the convenience of witnesses who are located outside both the current and transferee forums.").

More importantly, "it is the nature of the testimony and not the number of

7

prospective witnesses on each side that is important." In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d at 402. Here, notwithstanding that some tangentially related witnesses may reside in or near New York, the far greater number of the most material witnesses – i.e., the individual Defendants and Nuvelo employees – are located in California. See AtheroGenics, 2006 U.S. Dist. LEXIS 15786, at *15 (finding that this factor favored transfer to Georgia because Defendants and employees resided there, despite the fact that securities analysts and defendants' public relations firm resided in New York); Nematron Corp. Secs. Litig., 30 F. Supp. 2d at 402 (finding that this factor favored transfer to Defendant's home district because "testimony more critical and extensive is likely to be provided by the parties and witnesses residing" there).

In sum, this factor favors transfer to California.

D. Locus of Operative Facts

Nuvelo argues that the locus of the operative facts of this lawsuit – i.e., Nuvelo's allegedly fraudulent statements contained in its press releases – were issued from its company headquarters in California. "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." See, e.g., Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb, 2006 U.S. Dist. LEXIS 36018, at *16 (where "all of the press releases and corporate filings, as well as the alleged misstatements, originated at Bausch & Lomb headquarters in Rochester," this factor favored transfer); In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998); In re Hanger Orthopedic Group, Inc., 418 F. Supp. 2d 164, 169 (S.D.N.Y. 2006); AtheroGenics, 2006 U.S. Dist. LEXIS 15786, at *13.

The locus of the operative facts of this lawsuit centers on the misrepresentations made by Nuvelo in its press releases – all of which, as a matter of law, "occur" in California. Plaintiffs' attempts to aver that other allegedly "operative" facts occurred in New York are unavailing. For example, the clinical trials that occurred in or near the Southern District of New York were not the failed trials that engendered the fraud alleged in these actions. And even had Plaintiffs alleged specific misrepresentations that occurred at analysts' conferences in New York, courts have generally not found that statements at analysts' conferences alone warranted transfer where the "locus of all relevant decisionmaking" emanated from the company's headquarters, as is the case here.

8

See AtheroGenics, 2006 U.S. Dist. LEXIS 15786, at *12, 13 n.5.

Because the "locus of operative facts" here is in California, this factor favors transfer.[5]

### E. Location of Relevant Documents

Defendants argue that the relevant documents are available either at its headquarters, or at a separate storage facility in Union City, CA. "Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which will be in the defendants' possession." Blass v. Capital Int'l Sec. Group, 2001 U.S. Dist. LEXIS 3504, at *17-18 (E.D.N.Y. 2001).

Although Plaintiffs aver that some documents relating to a) the underwriters, b) Bayer, or c) the clinical trials will be produced from or near New York, as above, these documents (to the extent they actually reside in New York), like the witnesses, are far less relevant than the documents in California. This factor favors transfer.

### F. Remaining Factors

The factors of a) the relative means of the parties, b) the respective forums' familiarity with the governing law, and c) trial efficiency and the interests of justice are all neutral.

## IV. CONCLUSION

Because the majority of factors favor transfer, Defendants' motion to transfer venue for these four actions – *Electrical Workers v. Nuvelo*, 07-cv-975 (S.D.N.Y); *Logan v. Nuvelo*, 07-cv-1229 (S.D.N.Y.); *Giles v. Nuvelo*, 07-cv-1777 (S.D.N.Y.); and *Braker v. Nuvelo*, 07-cv-1953 (S.D.N.Y.) – is GRANTED.

The Clerk of the Court is instructed to transfer these four actions to the Northern District of California and remove them from my docket.

SO ORDERED.
July ___ 2007
New York, New York

_____
U.S.D.J.

---

[5] Although the majority of Courts in this district follow this approach, one Court in this district takes a different view. See Geopharma, 2005 U.S. Dist. LEXIS 8885, at *7 (where defendants argued that press releases were drafted at headquarters, and plaintiffs argued that information was disseminated via the NASDAQ exchange in New York, Court held that "operative facts" were spread across many districts).

9