COOLEY GODWARD KRONISH LLP
SCOTT D. DEVEREAUX (146050) devereauxsd@cooley.com)
GRANT P. FONDO (181530) (gfondo@cooley.com)
JEFFREY M. KABAN (235743) (jkaban@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:     (650) 843-5000
Facsimile:      (650) 857-0663

Attorneys for Defendants
NUVELO, INC., MICHAEL D. LEVY, TED W. LOVE
and GARY S. TITUS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re NUVELO, INC. SECURITIES LITIGATION | Master File No.  07-CV-04056-MJJ |
| | **CLASS ACTION** |
| | **[Proposed] Order Granting (1) Defendants' Motion to Dismiss Consolidated Complaint for Violations of the Federal Securities Laws and (2) Request for Judicial Notice** |
| | Hearing Date:  March 25, 2008 <br> Time:                9:30 a.m. <br> Courtroom:        11 <br> Judge:             Hon. Martin J. Jenkins |
| | Trial Date:        Not yet set |

## I.    INTRODUCTION

Before this Court is Nuvelo, Inc., ("Nuvelo" or "the Company"), Michael D. Levy, Ted W. Love and Gary S. Titus' ("Defendants") Motion to Dismiss ("Motion") a federal securities fraud action brought by a purported class consisting of all purchasers of Nuvelo stock between January 5, 2006 and December 8, 2006, inclusive, and Defendants' Request for Judicial Notice ("Request for Judicial Notice").   Defendants seek an order dismissing with prejudice the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1.

[Proposed] Order Granting
Defendants' Motion to Dismiss
Case No.  07-CV-04056-MJJ

1   Consolidated Complaint for Violations of the Federal Securities Laws under the heightened

2   pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and

3   pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Counsel for Defendants and

4   for Plaintiffs were in attendance and presented oral arguments.  Having considered the parties'

5   papers filed in support of and in opposition to the Motion and Request for Judicial Notice, oral

6   argument, and other pleadings and papers on file herein, and for the following reasons, the

7   Court hereby **GRANTS** Defendants' Motion with prejudice and Defendants' Request for

8   Judicial Notice.

9   **II.    JUDICIAL NOTICE**

10          As a procedural matter and in addition to the Motion to Dismiss the Consolidated

11  Complaint, Defendants have filed a Request for Judicial Notice, and ask the Court to notice

12  Exhibits A through DD attached to the Declaration of Grant P. Fondo in Support of Defendants'

13  Motion to Dismiss.  Federal Rule of Evidence 201 permits a court to take judicial notice of a fact

14  "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by

15  resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The

16  Court finds taking judicial notice of all the requested documents appropriate. *Branch v. Tunnell*,

17  14 F.3d 449, 454 (9th Cir. 1994, *overruled on other grounds by Galbraith v. County of Santa*

18  *Clara*, 307 F.3d 1119 (9th Cir. 2002); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857,

19  863-64 (N.D. Cal. 2004); *Wenger v. Lumisys, Inc.*, 2 F. Supp. 1231, 1241-43 (N.D. Cal. 1998);

20  *Padnes v. Scios Nova, Inc.*, 1996 WL 539711 (N.D. Cal. Sept. 18, 1996).  Accordingly, the Court

21  takes judicial notice of Exhibits A through DD.

22  **III.   FACTUAL HISTORY**

23          **A.    Nuvelo and Alfimeprase**

24          Nuvelo, Inc. ("Nuvelo" or "the Company"), a Delaware corporation, is a

25  biopharmaceutical company with its principal place of business in San Carlos, California.

26  Alfimeprase, the drug candidate at issue in this case, is a direct acting thrombolytic agent, or

27  blood clot dissolver.  The Company initially developed the alfimeprase for the treatment of two

28  conditions: acute peripheral arterial occlusion ("PAO"); and catheter occlusion ("CO").  PAO

2.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

occurs when arterial blood supply to the extremities is blocked by a clot, resulting in decreased blood flow to a portion of the body, often the legs. The consequences of PAO can be severe and treatment of the condition is costly. There are no Food and Drug Administration ("FDA") approved drugs for the treatment of PAO. CO is the formation of blood clots in catheters and occurs in 25% of the five million catheters placed each year. Currently, slow-acting thrombolytic drugs, such as Genentech, Inc.'s tPA Activase (alteplase), or more costly methods such as removing and replacing catheters, are used to resolve the problem of blocked catheters.

### B.    Phase II Clinical Trials

Prior to being approved by the FDA, a drug's safety and effectiveness must be demonstrated through human clinical trials. In 2004, Nuvelo announced that it had successfully completed its phase II clinical trials for PAO and CO. Nuvelo referred to its PAO clinical trial program as Novel Arterial Perfusion with Alfimeprase, or "NAPA," and to its phase II clinical trial as NAPA-1. NAPA-1 was designed to evaluate the safety and efficacy of alfimeprase for the treatment of acute PAO. As the Company disclosed, the study did not involve a placebo group but rather evaluated the drug's safety and effectiveness at varying dosages. In September 2004, Nuvelo presented the data from the NAPA-1 study, which revealed that the drug was generally safe and well-tolerated in patients, and was effective in helping a majority of patients avoid open vascular surgery.

Nuvelo referred to its clinical program for CO as Speedy Opening of Non-functional Occluded catheters with Mini-dose Alfimeprase, or "SONOMA," and to its phase II trial as SONOMA-1. The SONOMA-1 study compared the effects of three different doses of alfimeprase to Genentech's approved dosage of Cathflo Activase ("Genentech's Cathflo") (alteplase) in patients with blocked catheters. In December 2004, Nuvelo announced the results of SONOMA-1, which revealed in the study's subjects that alfimeprase was significantly more effective at restoring catheter flow to patients after 15 minutes than Genentech's Cathflo.

### C.    Phase III Clinical Trials

Nuvelo launched phase III trials for both PAO and CO. In April 2005, the Company announced the start of phase III trials for PAO. The phase III trials were comprised of two

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

3.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

placebo-controlled overlapping trials, NAPA-2 and NAPA-3. The NAPA-2 study compared the administration of 0.3 mg/kg of alfimeprase to a placebo in approximately 300 patients, with the primary endpoint of avoiding open vascular surgery in patients within thirty days of treatment.

The NAPA-3 study had the same endpoint and also compared 0.3 mg/kg of alfimeprase to a placebo in approximately 300 patients. On January 23, 2006, Nuvelo announced that the FDA had granted the PAO program "fast track" status, which allows for accelerated regulatory filings and review of drugs that address an unmet medical need for the treatment of a serious or life-threatening condition. In September 2006, patient enrollment in NAPA-2 had concluded and the Company announced that it expected results in late 2006 or early 2007.

Nuvelo announced that it had begun its CO phase III trials. With the CO phase III trials, Nuvelo did not perform two placebo controlled studies. Instead, the Company modeled its phase III trials for CO on the phase III trials which led to the approval of Genentech's Cathflo for the treatment of CO. Genentech's Cathflo trials consisted of a double-blind placebo controlled efficacy study and a single arm open label safety study. Similarly, the SONOMA-2 study compared 3.0 mg/kg of alfimeprase to a placebo as a treatment for approximately 300 patients with blocked catheters. The primary endpoint of the study was restoring function to the catheters 15 minutes after treatment. The SONOMA-3 study was a single-arm open label safety study of approximately 800 patients. The Company agreed to a statistical significance, or "p-value," of at least 0.00125 with the FDA for this trial, which is comparable to the same level of statistical significance of conducting two placebo controlled studies at the traditional p-value of 0.05 (0.00125 = .05 x .05/2). On September 5, 2006, patient enrollment had concluded and Nuvelo announced that it expected results in late 2006 or early 2007.

**D.    Partnership With Bayer**

In January 2006, Nuvelo announced a partnership with Bayer HealthCare AG ("Bayer") to develop and commercialize alfimeprase. The partnership provided Nuvelo with an initial payment of $50 million with the potential for $335 million, gave Bayer the right to commercialize alfimeprase internationally, and required Bayer to pay 40% of Nuvelo's global clinical development expenses for alfimeprase.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

4.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

E.    **The December 11, 2006 Announcement And Subsequent Events**

On December 11, 2006, Nuvelo announced that the alfimeprase phase III trials for both the PAO and the CO indications did not meet the primary and secondary endpoints. Nuvelo's stock price fell from $19.55 per share on December 8, 2006 to $4.05 per share on December 11, 2006.

F.    **Summary Of Alleged Securities Violations**

At issue in this action is whether between January 5, 2006 and August 3, 2006, Defendants made materially false and misleading statements regarding alfimeprase and the PAO and CO clinical trials, with scienter.

## IV.    PROCEDURAL HISTORY

On February 9, 2007, the first of several Nuvelo shareholders filed complaint for violations of federal securities law in the United States District Court for the Southern District of New York. On July 20, 2007, these actions were transferred to this Court.

On September 21, 2007, this Court consolidated the above actions and appointed Juan Pablo Cabrera, Frank Petronis and Patricia Petronis, and Todd Stephens and Amy Stephens as Lead Plaintiffs. The Consolidated Class Action Complaint for Violations of Federal Securities Laws was filed with this Court on November 9, 2007.

## V.    LEGAL STANDARDS

A.    **Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint as a matter of law for two reasons: (1) the lack of a cognizable legal theory or (2) the pleading of insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 2001). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true. *See Blake v. Dierdorff*, 856 F.2d 1365, 1368 (9th Cir. 1988). The court need not, however, accept legal conclusions asserted as "facts." *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1476 n.5 (N.D. Cal. 1992) (citation omitted), *aff'd*, 11 F.3d 865 (9th Cir. 1993).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

5.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

**B.    Section 10(b) And Rule 10b-5**

To be actionable under Section 10(b) of the Exchange Act and Rule 10b-5, plaintiffs must allege: (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which they relied (5) which proximately caused plaintiffs' injury. *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002) (citation omitted).

**C.    Section 20(a)**

To establish "control person" liability pursuant to Section 20(a) of the Exchange Act, plaintiffs must show that a primary violation of Section 10(b) occurred and that each control-person defendant "directly or indirectly" controlled the violator. *Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

**D.    Rule 9(b) And The Private Securities Litigation Reform Act**

In all actions involving fraud, plaintiffs must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 839 (N.D. Cal. 2000) (citation omitted).

The PSLRA significantly heightened pleading requirements in private securities litigation in order to eliminate meritless claims and imposes even more stringent requirements for pleading falsity and scienter. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999). Specifically, both fraud and scienter must be pled with particularity. 15 U.S.C. § 78u-4(b)(1)-(3).

To satisfy these heightened pleading requirements, plaintiffs must identify with particularity (1) each statement alleged to have been misleading, (2) the reason or reasons why the statement is misleading, and (3) if an allegation regarding the statement or omission is made on information and belief, all facts on which that belief is formed. *See* 15 U.S.C. § 78u-4(b)(1); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002). All allegations are deemed to be made on information and belief unless plaintiffs have personal knowledge of the facts. *Vantive*, 283 F.3d at 1085, n.3. Plaintiffs must further allege particularized facts demonstrating that the alleged misstatement or omission is material, that is that "there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1  made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416

2  F.3d 940, 946 (9th Cir. 2005).

3       A complaint must also "state with particularity facts giving rise to a strong inference that

4  the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  The Ninth Circuit

5  has defined the requisite state of mind as "deliberately reckless or conscious misconduct," and

6  requires plaintiffs to plead "particular facts giving rise to a strong inference" of that mental state.

7  *Silicon Graphics,* 183 F.3d at 974.   In order to establish that a defendant has acted with

8  "deliberate reckless[ness] or conscious misconduct," a plaintiff "must state facts that come closer

9  to demonstrating intent, as opposed to mere motive and opportunity." *Id.*; *see also Ronconi v.*

10  *Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).  "When determining whether plaintiffs have shown a

11  strong inference of scienter, the court must consider all reasonable inferences to be drawn from

12  the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.,* 298

13  F.3d 893, 897 (9th Cir. 2002) (emphasis added).   A complaint will only survive a motion to

14  dismiss "if a reasonable person would deem the inference of scienter cogent and at least as

15  compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v.*

16  *Makor Issues & Rights, LTD., et al.*, 127 S. Ct. 2499, 2510 (2007).

17  **VI.    ANALYSIS**

18       **A.    Plaintiffs' Fail to State a Claim for a Section 10(b) Violation**

19       Defendants move the Court to dismiss the Consolidated Complaint with prejudice

20  pursuant to the PSLRA and Federal Rules of Civil Procedure 9(b) and 12(b)(6), arguing that

21  Plaintiffs' fail to adequately plead materiality, falsity, scienter and loss causation.

22            **1.    Confidential Witness Allegations**

23       Plaintiffs rely on four confidential witnesses ("CW").  CW 1 alleged that "s/he discussed

24  the potential for the drug delivery system to disrupt the clot during quarterly company-wide

25  meetings . . .."  (¶ 37.)  CW 2 alleged that Nuvelo had difficulty enrolling patients for NAPA

26  because "most patients eligible for the study opted to be treated with a Genentech thrombolytic

27  drug" instead.  (¶ 47.)  CW 3 alleged the Company had difficulty designing the phase III

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

7.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

1    protocols. (¶ 40.) CW 4 stated that s/he was concerned by the low p-value and that Deitcher and

2    Wang-Clow discussed the low p-value. (¶ 40.)

3            However, three of the CWs left Nuvelo prior to the completion of the phase II studies and

4    well before the start of the class period and, thus, could not have had personal knowledge of the

5    "truth" during the class period nor have known the state of Defendants' knowledge at that time.

6    *See In re Silicon Storage Tech., Inc., Sec. Litig.,* No C 050295 PJH, 2006 WL 648683 at *10

7    (N.D. Cal. March 10, 2006) (holding that confidential witnesses who were not employed by the

8    company during the class period were not in a position to have personal knowledge regarding the

9    defendants alleged misstatements).    Further, Plaintiffs failed to identify sufficient facts

10   "'accompanied by enough particularized detail to support a reasonable conviction in the

11   informant's basis of knowledge.'"  *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102,

12   1112 (N.D. Cal. 2003) (citation omitted). *See also In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.

13   Supp. 2d 1248, 1271 (N.D. Cal. 2000).

14           Plaintiffs' allegations that employees, including CW 1 and CW 4, expressed doubts about

15   alfimeprase and the low p-value used in one of the trials are insufficient to show falsity or

16   scienter. "The Court must be able to tell whether a confidential witness is speaking from personal

17   knowledge or 'merely regurgitating gossip and innuendo' . . . knowledge based on hearsay can

18   not be imputed to the Individual Defendants." *In re Metawave Communications Corp. Sec. Litig.*,

19   298 F. Supp. 2d 1056, 1068-69 (W.D. Wash. 2003) (quotation omitted); *Zucco Partners, LLC v.*

20   *Digimarc Corp.*, 445 F. Supp. 2d 1201, 1207 (D. Ore. 2006) (allegations by confidential

21   witnesses based on hearsay are not probative).  The Court finds that the confidential witnesses'

22   allegations are neither probative of materiality, falsity or scienter.

23           **2.        Plaintiffs Fail To Plead Materiality And Falsity With Particularity**

24           "Fraud by hindsight is not actionable." *Ronconi*, 253 F.3d at 430 n.12 (citation omitted).

25   *See also Wenger*, 2 F. Supp. 2d at 1250 (citation omitted).  Plaintiffs must "set forth, as part of the

26   circumstances constituting fraud, an explanation as to why the disputed statement was untrue or

27   misleading when made," *In re GlenFed, Inc., Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994), and

28   that the misstatement must be material. *Livid Holdings Ltd.*, 416 F.3d at 946.  Statements of

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

8.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

1    expectation or belief are only actionable if (1) the statement is not genuinely believed; (2) there is

2    no reasonable basis for the belief; or (3) the speaker is aware of undisclosed facts tending to

3    seriously undermine the accuracy of the statement. *In re 2theMart.Com. Sec. Litig.*, 114 F. Supp.

4    2d. 955, 961 (C.D. Cal. 2000).

### a.    Alternative Hypothesis For The PAO Trials

6    Plaintiffs did not dispute the accuracy of the reporting of the phase II PAO trial results.

7    Rather, Plaintiffs allege that Defendants' statements regarding the success of the PAO phase II

8    trials and the likely success of the phase III trials were false and misleading.  Plaintiffs rely on a

9    confidential witness who stated that she had discussed at a meeting in 2004 or 2005 the

10   possibility that the catheter delivering the drug—rather than the drug itself—was responsible for

11   clot disruption.   However, Plaintiffs fail to allege specific facts regarding the meeting and

12   whether the Defendants attended or heard about the meeting.  Plaintiffs also fail to allege any

13   facts that Defendants knew the catheter was disrupting the clots or that the drug was ineffective

14   when the statements were made.

### b.    PAO Market For Alfimeprase

16   Plaintiffs' allegation that PAO's market was smaller than predicted due to competition

17   from off-label drugs is irrelevant to whether Defendants' statements at issue were materially false

18   and misleading.  Since alfimeprase was not commercialized, there is no way to know whether the

19   market was smaller than the Company's prediction.  Further, the company disclosed in its Form

20   10-K (filed March 15, 2006) that off-label drugs such as Activase were being used to treat PAO.

21   *See also Washington Legal Found. v. Henney*, 202 F.3d 331, 333 (D.C. Cir. 2000) (stating that

22   off-label use is "commonplace in modern medical practice and ubiquitous in certain specialties").

23   Plaintiffs have failed to sufficiently allege that the Company's prediction for the PAO market was

24   inaccurate or allege with particularity any facts by which this Court can conclude that "most" of

25   the eligible patients preferred the Genentech drug or how these "facts" lead to the conclusion that

26   the market for alfimeprase was smaller than predicted.  Plaintiffs have failed to plead sufficient

27   facts that Defendants' statements regarding the market for alfimeprase were false or misleading.

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

9.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

1

            **c.**      **P-value Of CO Phase III Trials**

2

      Plaintiffs' allegation that Defendants' failure to disclose that the lower p-value for the

3

SONOMA-2 trial rendered Defendants' statements during the class period materially false and

4

misleading also fails. The market was aware that the p-value for the study was below 0.05

5

because Nuvelo repeatedly disclosed that its phase III trials for CO were modeled after the

6

successful Genentech's Cathflo trials, which used a double-blind placebo controlled study and a

7

larger open label study without a placebo. In order to verify the validity of the study, a lower p-

8

value was used pursuant to the FDA's Guidance, which "is presumed to be known in an efficient

9

market." *Noble Asset Management v. Allos Therapeutics, Inc.*, 2005 WL 4161977, at *9 (D. Col.

10

Oct. 25, 2005). Plaintiffs have plead no facts alleging that Defendants knew at the time of the

11

alleged misstatements that the trial would not meet this p-value and would cause the phase III

12

trials for CO and PAO to fail.

13

      Plaintiffs' reliance on a confidential witness also fails to show that the Defendants'

14

statements were false and misleading when made. The fact that CW 4 expressed "concern" about

15

the low p-value and that it was purportedly discussed by two non-defendants is insufficient to

16

show that defendants knowingly omitted a material fact, *see In re Syntex Corp. Sec. Litig.*, 95

17

F.3d 922, 931 (9th Cir. 1996) (holding that plaintiffs failed to allege any facts demonstrating that

18

defendants had knowledge that their drug would not be approved by the date they predicted even

19

though plaintiffs were able to show knowledge of deficiencies in the testing procedures), or to

20

show that Defendants' statements were false when made. *Padnes*, 1996 WL 539744 at *5

21

(finding that "[m]edical researchers may well differ with respect to what constitutes acceptable

22

testing procedures, as well as how best to interpret data garnered under various protocols" and

23

noting that the "securities laws do not impose a requirement that companies report only

24

information from optimal studies, even if scientists could agree on what is optimal"); *Securities*

25

*and Exchange Commission v. Guenthner*, 395 F. Supp. 2d 835, 848 (D. Neb. 2005) (holding that

26

evidence of "disagreement, infighting, and differences in management styles between managers

27

and executives of two merged companies" does not infer securities fraud).

28

                       10.

1

### d.   Target Product Profile For The CO Phase III Trials

2

Plaintiffs allege that Defendants failed to disclose that Nuvelo had a "target product

3

profile" for the CO phase III trial, and that if it did not meet that profile, the Company would not

4

proceed to market alfimeprase for CO. (¶ 97.) However, the December 11, 2006 announcement

5

that the phase III trials were unsuccessful had nothing to do with the failure of the phase III trials

6

to meet a target product profile. Further, Plaintiffs fail to allege any particularized facts relating

7

to the target product profile.

8

### 3.   Bayer's Partnership With Nuvelo Negates Any Inference Of Falsity Or Scienter

9

10

The significant partnership between Nuvelo and Bayer announced on January 5, 2006

11

undermines Plaintiffs' claims that Defendants knew their statements were false and misleading.

12

Bayer is a sophisticated, independent third party. It is reasonable to infer that Bayer invested in

13

alfimeprase because it was convinced as to the success of the phase II trials and the likelihood of

14

success for the phase III trials. *Gompper*, 298 F.3d at 897. For the foregoing reasons, Plaintiffs

15

fail to allege that any of the alleged statements were materially false or misleading.

### 4.   Plaintiffs Fail To Allege A Strong Inference of Scienter

16

17

None of Plaintiffs' allegations create a strong inference that Defendants acted with

18

"deliberate reckless[ness] or conscious misconduct." Plaintiffs fail to plead particularized facts

19

demonstrating that any defendant had knowledge that any disclosure was materially false and

20

misleading, or that the statements were made with the intent to deceive.

21

Plaintiffs' reliance on the group pleading doctrine is insufficient to support a strong

22

inference of scienter. The group pleading doctrine is inconsistent with the heightened pleading

23

standards of the PSLRA. *See In re Silicon Storage,* 2006 WL 648683 at *21-22 (rejecting group

24

pleading doctrine and interpreting the PSLRA "as requiring that plaintiffs plead facts showing

25

scienter as to each defendant individually").

26

Further, Plaintiffs' assertions that the Individual Defendants were motivated to engage in

27

fraud (1) because their compensation was tied to the Company's financial performance and (2) in

28

order to gain access to capital are also insufficient to support an inference of scienter. *See In re*

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

11.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

1   *Calpine Corp. Sec. Litig.,* 288 F. Supp. 2d 1054, 1087 (9th Cir. 2003) (holding that plaintiffs'

2   allegation that individual defendants acted with scienter because they "wished to maximize their

3   executive compensation packages" was "insufficient" to support a strong inference of scienter);

4   *In re Autodesk,* 132 F. Supp. 2d at 844 (same); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027,

5   1038 (9th Cir. 2002) (holding that plaintiffs' assertions of improper motive and opportunity failed

6   to meet the heightened pleading requirements for scienter where the company's "alleged desires

7   to obtain favorable funding and to expand abroad [were] in themselves ordinary and appropriate

8   corporate objectives"); *In re Thoratec Corp. Sec. Litig.*, 2006 WL 1305226 at *10-11 (N.D. Cal.

9   2006) (holding that plaintiff's allegations of fraud with relation to a private placement offering

10  were "too generalized to create a strong inference" of scienter where plaintiff alleged that

11  company artificially inflated stock price in order to "raise capital to cover [a] shortfall" in

12  revenue).

13        Further, Plaintiffs' allegation that one defendant, Titus, sold $1.5 million worth of stock

14  fails to show an inference of scienter.  Stock sale allegations cannot raise an inference of scienter

15  unless Plaintiffs allege specific facts showing that the sales were suspicious.  *Silicon Graphics,*

16  183 F.3d at 986.  Plaintiffs failed to allege particularized facts demonstrating that Titus' sales

17  were suspicious.  Further, Titus' stock sales were made in connection with his announced

18  resignation and thus further do not raise an inference of scienter.  *See In re ICN Pharms., Inc. Sec.*

19  *Litig.*, 299 F. Supp. 2d 1055, 1067 (C.D. Cal. 2004) (stock sales made in the context of an

20  officer's resignation do not raise an inference of scienter).  Moreover, Plaintiffs' failure to allege

21  any sales by any of the other insiders further undermines their allegation that Defendants acted

22  with scienter.  *Lipton*, 284 F.3d at 1036-1038 (no inference of scienter where "only [one insider]

23  and not other insiders sold during the class period);  *Ronconi*, 253 F.3d at 435-436 (holding that

24  "[o]ne insider's well timed sales do not support the 'strong inference' required by the statute

25  where the rest of the equally knowledgeable insiders act in a way inconsistent with the inference

26  that the favorable characterizations of the company's affairs were known to be false when made").

27

28

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

5.     **The PSLRA's "Safe Harbor"**

Under the PSLRA, forward-looking statements are non-actionable where either: (A) the forward-looking statement is "identified as a forward-looking statement and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement;" or (B) "the plaintiff fails to prove that the forward-looking statement . . . was made with actual knowledge . . . that the statement was false or misleading." 15 U.S.C.A. § 78u-5(c)(1)(A)(i) and (B)(i) (emphasis added).

The definition of "forward-looking statement" includes projections of revenues, income, earnings, a statement of the plans and objectives of management for future operations, including plans relating to products or services, a statement of future economic performance, or "any statement of the assumptions underlying or relating to" the same. 15 U.S.C. § 78u-5(i)(1)(A)-(D). The Court finds that all the alleged misstatements were forward-looking statements and were identified as such.   (*See* ¶¶ 92-94, 100, 101, 108, 109, 117, 120, 124, 125; Appendix of Cautionary Statements ("Appendix").)  *See e.g. Noble Asset Management*, 2005 WL 4161977 at *9 ("Projections about the likelihood of FDA approval are forward-looking statements" because they are predictions of the company's plans for its product.).

The Court further finds that Nuvelo's cautionary statements were sufficient to invoke the protection of the safe harbor. A company is not required to have identified the precise factor that leads to a business reversal for its cautionary statements to be sufficient. H.R. REP. NO. 104-369 at 44 ("[f]ailure to include the particular factor that ultimately causes the forward-looking statement not to come true will not mean that the statement is not protected by the safe harbor"); *Harris*, 182 F.3d at 807 (holding that disclosure of the exact factor is not required, "when an investor has been warned of risks of a significance similar to that actually realized, she is sufficiently on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward"); *Syntex*, 95 F.3d at 930-931 (holding that defendants' optimistic statements regarding FDA approval were inactionable forecasts because "Syntex was making a prediction far in advance, while the drug was still in the testing stage, about an approval decision that lies in the hands of a regulatory body"); *Noble Asset*

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

13.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

1    *Management*, 2005 WL 4161977, at \*9 (holding that cautionary language warning that the

2    company might not be able to prove the efficacy of their drug and that FDA approval might not

3    be obtained was sufficient, the company was not required to warn about the specific risk that

4    caused the FDA to reject its drug application).   All of Nuvelo's forward-looking statements

5    regarding the future potential success of alfimeprase were accompanied and covered by

6    appropriate and meaningful "safe harbor" language, in which Nuvelo specifically warned, among

7    other things, that its past clinical results may not be predictive of future clinical results, that the

8    product may prove ineffective or unsafe, that there can be no assurance of FDA approval, that it

9    faces competition from possibly superior products, that at any stage of its clinical trials Nuvelo

10    could redesign a trial or discontinue the development of a product, and that even if alfimeprase

11    receives FDA approval it may never be successfully commercialized.

12          **6.     Defendants' Statements Of Optimism Are Non-Actionable**

13        "[V]ague, generalized, and unspecific assertions" of corporate optimism or statements of

14    "mere puffing" are not actionable material misstatements of fact under federal securities laws.

15    *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003).  The Court

16    finds that Nuvelo's statements such as statements expressing optimism that alfimeprase was

17    effective and the potential success of the clinical trials are immaterial, non-actionable puffery.

18    *See Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 419 (5th Cir. 2001) (holding that defendants'

19    statement that "Vasomax was a 'fast-acting,' 'improved formulation' for delivering

20    phentolamine" was "nothing more than inactionable 'puffing'"); *Noble Asset Management v.*

21    *Allos Therapeutics*, 2005 WL 4161977 at \*11-12 (holding that defendants' statements describing

22    its phase III trial result as 'compelling,' 'consistent,' 'impressive,' 'significant,' 'strong,' and

23    'positive' was mere puffing); *In re Bristol-Meyers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 558, n.

24    2 (S.D.N.Y. 2004) (holding that defendants' "statement regarding FDA approval cannot be

25    considered a guarantee of FDA approval or otherwise false and misleading" but was instead "non

26    actionable opinion or corporate puffery"); *In re Viropharma Inc. Sec. Litig.*, 2003 WL 1824914 at

27    \*6 (E.D. Pa. April 7, 2003) (holding that defendants' statements referring to "Pelconaril as 'a

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

14.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

1    scientific revolution'" and to "successful clinical trials as a momentous event in Viropharma's

2    history" were mere puffery).

3    ### 7.    Plaintiffs Fail To Plead Loss Causation

4        To establish loss causation, Plaintiffs must allege "a causal connection between the

5    material misrepresentation and the loss." *Dura Pharmaceuticals, Inc. v. Brudo*, 544 U.S. 336,

6    342 (2005). The Court finds that Plaintiffs have failed to connect the alleged misstatements and

7    the stock drop of December 11, 2006 and, therefore, have failed to adequately plead loss

8    causation.

9    ### B.    Liability For Section 20(a) Violation

10       The Court finds that because Plaintiffs fail to plead a primary violation of Section 10(b)

11   and fail to plead facts sufficient to demonstrate any Defendant exercised control, Plaintiffs have

12   failed to adequately plead that defendants Levy, Love and Titus are liable as control persons

13   under section 20(a) of the Securities Exchange Act of 1934. *See Paracor Fin. Inc. v. General*

14   *Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

15   ### C.    Dismissal With Prejudice

16       In view of the allegations in the Consolidate Complaint and arguments presented by the

17   parties, any amendment to the Consolidated Complaint would be futile. *See Albrecht v. Lund*,

18   845 F.2d 193, 195 (9th Cir. 1988).

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

15.

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO. 07-CV-04056-MJJ

1

## VII.   CONCLUSION

2       The Complaint fails to state a claim for relief under Section 10(b) and Rule 10b-5 and

3  Section 20(a), and leave to amend would be futile.  Therefore, Defendants' Motion to Dismiss

4  is **GRANTED** with prejudice, and the Consolidated Complaint is dismissed without leave to

5  amend.  The Court further **GRANTS** Defendants' Request for Judicial Notice as to Exhibits A

6  through DD.

7       **IT IS SO ORDERED.**

8  Dated: _____, 2008

9

10

11                                              _____

12                                              HON. MARTIN J. JENKINS
                                                UNITED STATES DISTRICT JUDGE

765110 v2/PA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
CASE NO.  07-CV-04056-MJJ