COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DENNIS J. HERMAN (220163)
ELI R. GREENSTEIN (217945)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
dennish@csgrr.com
elig@csgrr.com

Liaison Counsel

BERGER & MONTAGUE, P.C.
SHERRIE R. SAVETT
BARBARA A. PODELL
PHYLLIS M. PARKER
1622 Locust Street
Philadelphia, PA  19103
Telephone:  215/875-3000
215/875-4604 (fax)
ssavett@bm.net
bpodell@bm.net
pparker@bm.net

SCHATZ NOBEL IZARD, P.C.
ANDREW M. SCHATZ
JEFFREY S. NOBEL
NANCY A. KULESA
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT  06103
Telephone:  860/493-6292
860/493-6290 (fax)
aschatz@snilaw.com
jnobel@snilaw.com
nkulesa@snilaw.com

Co-Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re NUVELO, INC. SECURITIES LITIGATION | Master File No. 3:07-cv-04056-MJJ |
| | CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | [PROPOSED] ORDER DENYING (1) DEFENDANTS' MOTION TO DISMISS CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND (2) DENYING IN PART AND GRANTING IN PART DEFENDANTS' REQUEST FOR JUDICIAL NOTICE |

1   Before the Court are Defendants' Motion to Dismiss Consolidated Complaint for Violations of the Federal Securities Laws ("Motion to Dismiss") and Defendants' Request for Judicial Notice ("RJN"). For the reasons stated herein, the Motion to Dismiss is DENIED in its entirety, and the RJN is DENIED IN PART AND GRANTED IN PART.

## I. BACKGROUND

This is a class action for securities fraud brought on behalf of a putative Class of investors who purchased the publicly-traded securities of Nuvelo, Inc., ("Nuvelo" of the "Company") between January 5, 2006 and December 8, 2006 (the "Class Period"). Plaintiffs allege that Nuvelo and three of its four executive officers during the Class Period – Chief Executive Officer Ted Love, Chief Financial Officer Gary Titus, and Vice President of Research and Development Michael Levy – misled investors about the clinical trials for its lead product candidate, alfimeprase, for the treatment of two medical conditions: catheter occlusion ("CO") and peripheral arterial occlusion ("PAO").

Plaintiffs allege that defendants misled investors in two principal respects. First, plaintiffs allege that defendants knew, but failed to disclose, that for the Phase 3 CO clinical trials to succeed, the results would have to reach a "p-value" of 0.00125. A p-value is a measure of statistical significance used by the U.S. Food and Drug Administration ("FDA") to determine whether the results of a clinical drug trial are sufficient to establish that the drug is safe and effective, or whether the results may instead be explained merely by chance. Plaintiffs allege that the FDA typically uses a p-value of 0.05 to test statistical significance, a level that is 40 times less stringent than the p-value used in the Phase 3 CO trial. Defendants do not dispute any of these facts.

Second, plaintiffs allege that defendants knew, but failed to disclose, that blood flow could often be restored in patients suffering from PAO when the intravenous catheter used to deliver the drug disrupted the blood clots originally causing the blockage in flow. Plaintiffs allege that defendants' failure to disclose this fact misled investors about the significance of the results of Phase 2 alfimeprase trials for PAO, which did not involve a placebo arm, and the risks to the success of the Phase 3 PAO trials that were ongoing during the Class Period, which did contain a placebo arm. Again, defendants do not dispute that they knew that the catheter used in the Phase 2 trial could have

restored blood flow in some of the patients being tested, nor do they contend that the risk this presented to the reliability of the Phase 2 results or the potential success of the Phase 3 trial was ever specifically disclosed to investors.

Plaintiffs allege that the failure to disclose these facts caused certain statements defendants made during the Class Period to become misleading by omission, including statements about: (1) the extent to which alfimeprase had "demonstrated" its ability to dissolve clots in the Phase 2 PAO trials, and that, based on these results, Nuvelo had designed a Phase 3 clinical trial that, even with "conservative" assumptions about placebo rates, had "overwhelming" statistical power to succeed;[1] (2) statements that, based on the convincing results of the Phase 2 trials, where alfimeprase was so successful Nuvelo had closed the trial early, defendants "expect the Phase 3 trial results to confirm the ability of alfimeprase to restore function to occluded catheters in 15 minutes or less, as demonstrated in our Phase 2 trial" (¶¶54, 100); and (3) statements that the PAO and CO indications provided a "low risk path to regulatory approval" and a "rapid and low risk entry strategy" with a "high probability of success" that would allow alfimeprase to be "rapid to market" where it could be exploited for treatment of more financially-lucrative conditions, including deep vein thrombosis and ischemic stroke (¶¶6, 71, 94, 95, 101, 102, 109).

Plaintiffs allege that the truth concealed by defendants' alleged fraudulent statements and omissions was revealed to the market on December 11, 2006, when Nuvelo first announced that both the Phase 3 trials had failed because alfimeprase had not performed any better than a placebo in

---

[1] ¶¶69, 92, 101, 116, 120, 125. *See also* ¶92 ("Alfimeprase . . . has been shown in clinical studies to provide rapid clot dissolution."); ¶116 (the "announced results from the NAPA-1 trial, a Phase 2 dose escalation study, demonstrated that alfimeprase can restore arterial blood flow within four hours of initiation of dosing"); ¶120 (the Company "took a conservative case scenario and allowed for a certain percentage of patients to be deemed to respond to placebo" and that, even so "the statistical power is still overwhelming for this trial") and (in talking about the Phase 3 PAO trial, Titus told investors that: "really the driver here is not the statistical power for approving efficacy, because we believe that can be done with a relatively small patient sample, but we need to generate a reasonable size patient safety database to seek approval. We believe we still have overwhelming statistical power to detect the difference between active therapy such as alfimeprase – which is indeed very active based on our Phase 2 studies to date – and placebo.") Unless otherwise noted, paragraph references ("¶__" or "¶¶__") are to the Consolidated Complaint for Violations of the Federal Securities Laws filed on November 9, 2007 (the "Complaint").

[PROPOSED] ORDER DENYING (1) DEFS.' MOTION TO DISMISS CONSOL. COMPL. FOR VIOLATIONS OF THE FEDERAL SEC. LAWS AND (2) DENYING IN PART AND GRANTING IN PART DEFS.' REQUEST FOR JUDICIAL NOTICE - 3:07-cv-04056-MJJ - 2 -

clearing catheters in the PAO trial, and that alfimeprase had failed to achieve the required p-value of 0.00125 to achieve success in the CO trial. ¶¶10-11, 60-63, 84-88, 153-59.

## II. LEGAL STANDARD

### (a) Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Generally, dismissal is proper only when plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Further, dismissal is appropriate only if it appears beyond a doubt that plaintiff can prove no set of facts in support of a claim. *See Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). In considering a 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

### (b) Section 10(b) of the Securities Exchange Act

Section 10(b) of the Securities Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. §78j(b). Relatedly, Rule 10b-5 makes it unlawful for any person to use interstate commerce:

(a) to employ any device, scheme, or artifice to defraud;

(b) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. §240.10b-5.

For a claim under §10(b) and Rule 10b-5 to be actionable, a plaintiff must allege: (1) a misrepresentation or omission; (2) of material fact; (3) made with scienter; (4) on which the plaintiff justifiably relied; (5) that proximately caused the alleged loss. *See Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999). Concomitantly, as indicated above, pursuant to Fed. R. Civ. P. 9(b), to survive dismissal, plaintiff must plead both the falsity and scienter elements with particularity. *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).  As the Ninth Circuit explained:

> Because falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, we have incorporated the dual pleading requirements of 15 U.S.C. §§78u-4(b)(1) and (b)(2) into a single inquiry. In considering whether a private securities fraud complaint can survive dismissal under Rule 12(b)(6), [the court] must determine whether 'particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or [with] 'deliberate recklessness' made false or misleading statements to investors.' Where pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a 'strong inference' that misleading statements were knowingly or [with] deliberate recklessness made to investors, a private securities fraud complaint is properly dismissed under Rule 12(b)(6).

*Id*. (citations and internal quotation marks omitted).

In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), which strengthened the pleading requirements of Rules 8(a) and 9(b). Actions based on allegations of material misstatements or omissions under the PSLRA must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. §78u-4(b)(1).  The pleading requirements of the PSLRA were recently clarified by the Supreme Court, in *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499 (2007).

In determining whether a plaintiff has adequately alleged scienter, "courts must consider the complaint in its entirety. . . .  The inquiry is whether ***all*** of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Tellabs*, 127 S. Ct. at 2509, 2511 (emphasis in original).  A strong inference of

[PROPOSED] ORDER DENYING (1) DEFS.' MOTION TO DISMISS CONSOL. COMPL. FOR VIOLATIONS OF THE FEDERAL SEC. LAWS AND (2) DENYING IN PART AND GRANTING IN PART DEFS.' REQUEST FOR JUDICIAL NOTICE - 3:07-cv-04056-MJJ    - 4 -

scienter arises if, "[w]hen the allegations are accepted as true and taken collectively," a reasonable person would "deem the inference of scienter at least as strong as any opposing inference[.]" *Id*.

In holding that "[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e*., of the 'smoking gun' genre, or even the 'most plausible of competing inferences,'" *id*. at 2510, the Supreme Court lowered the standard for pleading scienter in this Circuit. Where previously, under *Gompper v. VISX, Inc*., 298 F.3d 893 (9th Cir. 2002), inferences supporting scienter had to be more plausible than non-culpable inferences, now the inferences need be only equally plausible. Hence, under *Tellabs*, "a tie goes to the Plaintiff." *Commc'n. Workers of Am. Plan for Employees' Pensions & Death Benefits v. CSK Auto Corp*., No. CV06-1503-PHX-DGC, 2007 U.S. Dist. LEXIS 72424, at *9 (D. Az. Sept. 27, 2007); *Sloman v. Presstek, Inc*., No. 06-cv-377-JD, 2007 U.S. Dist. LEXIS 69475, at *22 (D.N.H. Sept. 18, 2007).[2]

## III.   REQUEST FOR JUDICIAL NOTICE

At the motion to dismiss stage, the Court may only consider material within the four corners of the complaint. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994). A court may, however, consider documents properly submitted as part of the complaint or, under the incorporation rule, documents upon which the complaint necessarily relies and the authenticity of which is not disputed. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). The purpose for this exception is to allow the court to assess the complaint allegations in context. The court may take judicial notice of facts: (1) generally known within the community; or (2) "capable of accurate and ready

---

[2]   At this stage of the litigation, a court may not "weigh the evidence that might be presented at trial," but must simply determine "whether the complaint itself is legally sufficient." *In re Converium Holding AG Sec. Litig*., No. 04 Civ. 7897 (DLC), 2007 U.S. Dist. LEXIS 67660, at *8 (S.D.N.Y. Sept. 14, 2007); *see also In re NPS Pharm., Inc. Sec. Litig*., No. 2:06-cv-00570, 2007 U.S. Dist. LEXIS 48713, at *10 (D. Utah July 3, 2007) ("NPS makes various claims in support of its argument that the plaintiff has failed to plead particularized facts establishing the defendants' statements were false and misleading when made. The problem with all of NPS's claims is that they require the court to weigh evidence. Therefore, they are inappropriate at the motion to dismiss stage."). As the Ninth Circuit observed with respect to motions to dismiss: "Our function is satisfied when we identify issues sufficiently pled to raise triable questions. We need not consider the probability of success." *In re Syncor*, 239 Fed. Appx., 318, 321 (9th Cir. 2007).

determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Lee*, 250 F.3d at 689.

Defendants seek judicial notice of various Securities Exchange Commission ("SEC") filings, press releases, and other documents submitted with the motion. The Court finds that, to the extent these documents may properly be considered, the incorporation doctrine provides adequate ground for the Court to do so. *Lee*, 250 F.3d at 688-89. The Court does not take judicial notice of the ***truth*** of the matters set forth in these documents, but takes judicial notice only of the fact that the statements were made on the dates indicated. *Id*. at 688-90; *In re NorthPoint Commc'n Group, Inc., Sec. Litig. & Consol. Cases*, 221 F. Supp. 2d 1090, 1095 (N.D. Cal. 2002).

Exhibits A-H and J-Q provided by defendants, as well as Exhibits 1 and 2 submitted by plaintiffs in connection with their opposition to the judicial notice request, consist of press releases, conference call transcripts and other sources explicitly relied upon in the Consolidated Complaint for Violation of the Federal Securities Laws ("Complaint"). The Court therefore has considered these materials under the incorporation doctrine. *Lee*, 250 F.3d at 688-89. The Court will take judicial notice of the fact that the statements were made on the dates indicated, but will not take judicial notice of the truth of any of the statements contained therein. *Shurkin v. Golden State Vintners*, 471 F. Supp. 2d 998, 1011 (N.D. Cal. 2006).

The Court declines to take judicial notice of or otherwise consider any of the other documents submitted by the parties.[3]

## IV.   RULE 12(b)(6) ANALYSIS

It is well established that securities fraud liability may lie where a defendant knowingly or recklessly makes false or misleading statements about ongoing drug studies, including failing to

---

[3] Plaintiffs have also submitted additional exhibits, consisting of certain clinical trial data for alfimeprase's PAO and CO trials that was published after the Complaint was filed. Plaintiffs submitted these exhibits for the purpose of demonstrating additional facts that could be pled should amendment of the Complaint be required. Given the Court's finding that the existing Complaint adequately pleads a claim for securities fraud, the Court finds there is no need to consider these documents.

1  disclose facts giving rise to increased risks relating to drug approval or commercialization. *E.g., In re Amylin Pharm., Inc. Sec. Litig.*, No. 01cv1455 BTM (NLS), 2003 U.S. Dist. LEXIS 7667, at *23 (S.D. Cal. May 1, 2003) ("If a defendant states that it believes or expects that the FDA will approve its drug but has information tending to seriously undermine the accuracy of its statement, the statement is actionable."); *In re Viropharma, Inc. Sec. Litig.*, No. 02-1627, 2003 U.S. Dist. LEXIS 5623 (E.D. Pa. Apr. 7, 2003); *In re NeoPharm, Inc. Sec. Litig.*, No. 02C2976, 2003 Dist. LEXIS 1862, at *43-*44 (N.D. Ill. Feb. 7, 2003).

It is also well established that, in an omissions case such as this one, the capacity to mislead investors cannot be measured merely by the "literal truth" of a statement because even a literally true statement can be misleading through its context and manner of presentation if by "fair and reasonable implication an ordinary investor" would be misled. *Miller v. Thane Int'l, Inc.*, 508 F.3d 910, 917 (9th Cir. 2007). Literal truth is an insufficient defense because "an issuer's public statements cannot be analyzed in complete isolation," but must be read in context. *In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991).

### A. Falsity and Scienter Are Both Adequately Pled

Because falsity and scienter are commonly demonstrated by the same facts, the Court will consider these issues together. *Ronconi*, 253 F.3d at 429. Reading the Complaint holistically and presuming the truth of its allegations, as *Tellabs* requires, the Court has little difficulty in concluding, at this stage of the litigation, that the statements complained of were materially misleading to investors, and that each of the defendants acted with scienter in communicating this misleading information to the market.

#### 1. PAO Trials

The gravamen of plaintiffs' claim, as outlined above, is that defendants misled investors by failing to disclose the known fact that the catheter used to deliver alfimeprase to PAO patients could cause blood clots to be disrupted, thus relieving the symptoms for which treatment was sought. As a result, plaintiffs' contend, there was no way to reliably determine the extent to which the Phase 2 trials reflected action of the drug, or merely the effect of the catheter. As a result, plaintiffs'

contend, the statements described above regarding both the results of the Phase 2 trials and the "overwhelming statistical power" for the Phase 3 trials to succeed were materially false and misleading to investors.

Plaintiffs' claim in this respect is clearly supported by the statement of defendant Love during a December 11, 2006 conference call held to discuss the failure of the drug trials, where he admitted that the Company had "always" known that clots could be disrupted simply by inserting the drug delivery catheter:

> So to be clear, its always been known that mechanical devices can work and probably what mechanical devices do is increase the surface area of the clot which is in contact with uncoagulated blood and that facilitates much like breaking an ice cube apart would facilitate dissolution in water.

*See* Exhibit 1 to the Declaration of Dennis J. Herman in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Consolidated Complaint for Violation of the Federal Securities Laws ("Herman Decl."); ¶37. Love further admitted that this risk, which had never been previously disclosed to investors, was likely the primary cause of the misleading Phase 2 results:

> Jim Birchenough:   So I'm trying to understand why that might not have happened in the Phase 2 experience where it seems you had higher thrombolysis rates?
>
> Dr. Ted W. Love:   . . . I actually think it did probably happen in Phase 2.

Herman Decl., Ex. 1; ¶62.

In seeking dismissal of the Complaint, defendants do not directly challenge this admission, but instead dispute the reports of certain confidential witnesses described in the Complaint. These witnesses generally describe that Love and Levy each had significant responsibilities for the design and/or conduct of the PAO trials and, in one instance, recount that the risk was specifically raised internally during a pre-Class Period meeting at Nuvelo as a possible explanation for the seemingly positive Phase 2 results. ¶40. While these allegations, standing alone, might not be enough to demonstrate scienter, the Court finds that, in combination with Love's admissions set forth above, they meet the PSLRA pleading requirements. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232, 1234 (9th Cir. 2004) (corporate executives admissions as to what they knew and what information they had access to collectively sufficient to raise strong inference of

scienter); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 943 n.21 (9th Cir. 2003) (rejecting as "patently incredible," that high-ranking officers were unaware of major business events likely to have a significant impact on company's financial condition).

The Court is not persuaded by defendants' contention that the reports of these witnesses should be discounted merely because some of them left Nuvelo prior to the Class Period. Rather, the Court is persuaded, under the circumstances of this case, that the information provided by these witnesses is sufficient to demonstrate, for purposes of pleading, that the undisclosed facts and heightened risks to the on-going clinical trials were known to defendants prior to the time that they made the statements alleged to be misleading. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (pre-class period data relevant to show knowledge at start of class period); *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 272 (3rd Cir. 2005). This is a more than sufficient basis on which to credit the information they provide. *Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005); *see also In re Cabletron Sys., Inc.*, 311 F.3d 11, 29-30 (1st Cir. 2002).

Nor is the Court persuaded by defendants' contention that, to successfully plead a claim under the circumstances of this case, plaintiffs must establish both defendants' knowledge of the undisclosed risks and that they knew the trials would fail because of those risks. Defs.' Mem. at 2, 12, 18.[4] Plaintiffs need not plead that defendants knew that the trials would fail. Rather, plaintiffs need only plead facts supporting the inference that defendants knew of the undisclosed facts and concealed risks, because it was the material omission of this information that misled investors about the current prospects for success of the alfimeprase trials:

> Whether the Defendants had to predict the FDA's decision is irrelevant. They are liable under 10b-5 if they made statements that a reasonable investor would consider in deciding whether to buy stock. All investing is based on investor's perceptions about the future. . . . Accuracy in these types of factual statements lies at the heart of what the securities laws are trying to protect.

---

[4]    "Defs.' Mem." refers to Defendants' Notice of Motion and Motion to Dismiss Consolidated Complaint for Violations of the Federal Securities Laws; Memorandum of Points and Authorities, filed on December 21, 2007.

[PROPOSED] ORDER DENYING (1) DEFS.' MOTION TO DISMISS CONSOL. COMPL. FOR VIOLATIONS OF THE FEDERAL SEC. LAWS AND (2) DENYING IN PART AND GRANTING IN PART DEFS.' REQUEST FOR JUDICIAL NOTICE - 3:07-cv-04056-MJJ     - 9 -

1  *Viropharma*, 2003 U.S. Dist. LEXIS 5623, at *17-*18; *see also Warshaw v. Xoma Corp.*, 74 F.3d
2  955 (9th Cir. 1996) (predictions of FDA approval made while discounting risks to ongoing clinical
3  trials are actionable statements); *In Re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 286 F.
4  Supp. 2d 1047, 1058 (D. Minn. 2003) (court rejected defendants' claim that they were not obligated
5  to disclose risky provisions in the company's credit facilities because they did not have a "crystal
6  ball" to foresee that the provisions would come into play; defendants' assertions did "not address
7  defendants' duty to give complete information on a subject once raised").

8         **2.**     **CO Trials**

9        The foregoing discussion is equally applicable to plaintiffs' claims that defendants misled
10 investors about the conduct of the CO trials. Plaintiffs need only plead that defendants were
11 deliberately reckless to the existence of the material risks to that trial – *i.e.*, the 0.00125 p-value –
12 and knew that the facts giving rise to that risk had not been disclosed to investors. Again, the Court
13 has little difficulty in concluding, given the existence of an express agreement with the FDA
14 requiring this p-value to be met, together with defendants' roles in and responsibility for the drug
15 development efforts and the importance of alfimeprase to the Company's overall financial success,
16 that each of the defendants knew about this p-value at the time they made optimistic statements to
17 the market regarding the reliability of the Phase 2 data and the likelihood of success of the Phase 3
18 trials. *Nursing Home Pension Fund, Local 144*, 380 F.3d at 1234; *Am. West*, 320 F.3d at 943.

19       Nor is the Court persuaded that investors knew that a standard for statistical significance
20 lower than the traditional p-value of 0.05 imposed by the FDA was being used in the CO trials. As
21 plaintiffs correctly point out, Nuvelo reported to investors that there would be two pivotal trials for
22 the Phase 3 trial of alfimeprase. ¶100. Since defendants' entire argument is premised on their
23 contention that investors understood that only a single pivotal trial was being performed, their
24 argument fails of its own accord. Moreover, the Court notes that, even if only one trial were being
25 performed, nothing in the FDA guidance documents relied upon by defendants require a p-value of
26 0.00125 to be used, much less put investors on notice that such a stringent requirement for
27 demonstrating statistical significance had been imposed. Defendants' repeated reliance on the
28

1  comparisons with a prior drug trial performed by Genentech – where a p-value of 0.05 was used –

2  together with the suspicious connection between the required p-value and the "target market profile"

3  for the drug – which was also undisclosed to investors during the Class Period – make it crystal clear

4  to this Court that dismissal at this juncture is not warranted.

### 3. Statements About the "Low Risk" Nature of the CO and PAO Trials

Plaintiffs allege that, throughout the Class Period, defendants repeatedly told investors that Nuvelo was starting its clinical testing of alfimeprase with the PAO and CO indications because that provided a "low risk path to regulatory approval" and a "rapid and low risk entry strategy" with a "high probability of success." ¶¶6, 71, 94, 95, 101, 102, 109. The Court finds that, for the reasons set forth above, these defendants knew or were deliberately reckless to the fact that these statements were materially false and misleading to investors because they failed to disclose known, substantial risks to the ongoing trials – *i.e.*, that the seemingly positive Phase 2 PAO results could have been caused by the catheter dislodging the blood clot rather than alfimeprase dissolving it, and that, for the CO trial to succeed, an extraordinarily difficult p-value of 0.00125 had to be met. *Miller*, 508 F.3d at 917; *Convergent*, 948 F.2d at 512.

The Court further finds that, at this stage, it cannot be said that defendants' risk warnings were sufficient to prevent investors from being misled, because neither of the specific risks described above were disclosed by those warnings. When considered together with defendants' public statements touting the Phase 2 results for both indications and strongly suggesting that the Phase 3 trials would succeed and the drug would be marketable, it is possible to conclude, as plaintiffs allege, that the generic and incomplete risk warnings contained in Nuvelo's public SEC filings were materially misleading to investors. *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1122 (C.D. Cal. 2005); *Amylin*, 2003 U.S. Dist. LEXIS 7667, at *21 ("[t]he warnings were not tailored to Defendants' statement regarding the sufficiency of the trial results . . . ."); *In re Seebeyond Tech. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1169 (C.D. Cal. 2003) (cautionary language is not meaningful where "it does not sufficiently identify those facts that the plaintiff alleges made the press release false or misleading"); *In re InfoSonics Corp. Sec. Litig.*, No. 06cv1231 BTM(WMc),

1  2007 U.S. Dist. LEXIS, at *30-*31 (S.D. Cal. Aug. 7, 2007) (language did not contain "meaningful cautionary statements" because it did not reveal that "[d]efendants already knew that Infosonics had lost its biggest U.S. customer. . ."). Accordingly, defendants have failed to meet their burden to establish that there was enough cautionary language so that 'reasonable minds could not disagree that the challenged statements were not misleading." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050, 1056 (9th Cir. 2005); *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004) ("[t]here is . . . no reason that a court can accept at the pleading stage, before plaintiffs have access to discovery – that the items mentioned in [defendant's] cautionary language were those that at the time were the (or any of the) 'important' sources of variance'").

### 4. Motive Allegations

The Court further finds that plaintiffs' allegations of significant stock sales by defendants Nuvelo and Titus, the substantial bonuses obtained by the individual defendants, and the pattern of announcing positive trial results for alfimeprase as the urgent need for additional financing arose serve to bolster the already strong showing of scienter. ¶¶4, 28-31, 145-47. While these allegations, standing alone, might be insufficient, when considered collectively and interpreting the Complaint as a whole, they do lend additional support for finding a strong inference of scienter has been pled here. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2005 U.S. Dist. LEXIS 20214, at *36 (N.D. Cal. Aug. 10, 2005) (contention that "defendants were motivated to inflate artificially Portal's stock price in the short term in order to conduct a successful secondary public offering and obtain much-needed operating capital' does allege facts of a palpable motive for fraud"). The Court further finds that the fact that some defendants did not sell stock is insufficient to defeat the inference of scienter, or to diminish the inferences flowing from the other facts alleged by plaintiffs. *Tellabs*, 127 S. Ct. at 2511 ("the absence of a motive allegation is not fatal."); *Am. West*, 320 F.3d at 944 ("Scienter can be established even if the officers who made the misleading statements did not sell stock during the class period. In other words, the lack of stock sales by a defendant is not dispositive of scienter."); *Daou*, 411 F.3d at 1022 (the PSLRA "neither prohibits nor endorses the pleading of insider trading as evidence of scienter . . .").

[PROPOSED] ORDER DENYING (1) DEFS.' MOTION TO DISMISS CONSOL. COMPL. FOR VIOLATIONS OF THE FEDERAL SEC. LAWS AND (2) DENYING IN PART AND GRANTING IN PART DEFS.' REQUEST FOR JUDICIAL NOTICE - 3:07-cv-04056-MJJ     - 12 -

**B.    Group Publication**

The "group publication" doctrine misnamed as such by defendants permits the Court to infer, at the pleading stage, that statements alleged to be false were made by corporate officers who had day-to-day responsibility for the business operations which are the subject of the statement. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987); *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir. 1995). Because the Ninth Circuit has not overturned *Wool* or *GlenFed* in this respect, the group publication doctrine continues to survive in this Circuit following the enactment of the PSLRA. *In re PETsMART, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 997 (D. Ariz. 1999) ("the doctrine survives the PSLRA"); *Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.* 38 F. Supp. 2d 1158, 1165 (C.D. Cal. 1998); *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1108 (D. Nev. 1998) ("[d]efendants offer no case authority for their ***proposition that group pleading has been sub silentio*** abolished by the PSLRA") (emphasis in original).

The Court finds that plaintiffs' allegations regarding the responsibilities of Love, Levy and Titus, Nuvelo's small size, and the actual participation of each of these defendants in communicating information about alfimeprase to investors during the Class Period are sufficient to support the allegation that each of these defendants is responsible for "making" those statements within the meaning of the federal securities laws.

**C.    Safe Harbor**

Defendants assert that certain statements are subject to dismissal under the PSRLA's "safe harbor" protections for forward-looking statements. The Court finds that defendants have failed to carry their burden of identifying the specific statements challenged on this ground, or explaining why the statements are forward-looking. The Court further finds, based on a review of the paragraphs cited by defendants in support of their conclusory argument, that the statements contained therein are primarily representations about current or historical facts, rather than future events.[5] Accordingly, the Court does not find any ground to dismiss the Complaint based upon

---

[5] ¶92 (Alfimeprase " has been shown in clinical studies to provide rapid clot dissolution."); ¶93 (The alfimeprase testing data "suggest[ed] a dramatic feat of action."); ¶100 ("We . . . expect the

1  defendants' safe harbor arguments. *Amylin*, 2003 U.S. Dist. LEXIS 7667, at *16 ("observed facts

2  about [drug] trial results and data" are not forward-looking statements); *see also Am. West*, 320 F.3d

3  at 937 (holding that if statements of past facts and their present effects upon the company were found

4  to be forward-looking, "any corporation could shield itself from future exposure for past misconduct

5  by making present-tense statements regarding the misconduct and its effects on the corporation,"

6  thereby eviscerating the Exchange Act); *In re Secure Computing Corp. Sec. Litig.*, 120 F. Supp. 2d

7  810, 818 (N.D. Cal. 2000) (statement that company was on track to meet expectations not forward-

8  looking).

### D.  Puffery

10  The Court rejects defendants' puffery argument on similar grounds. Defendants fail to meet

11 their burden of identifying the statements they contend are susceptible to dismissal on this ground, or

12 adequately explaining why this is so. A review of the paragraphs cited by defendants in support of

13 their conclusory argument again fails to support their contention that the statements contain only

14 "generalized, vague and unspecific assertions." *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d

15 367, 379 (9th Cir. 2003); *In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005, 1033 (S.D. Cal.

16 2006) ("'Statements that fall within the [puffery] rule tend to use terms that are not measurable and

---

Phase 3 trial results to confirm the ability of alfimeprase to restore function to occluded catheters in 15 minutes or less, as demonstrated in our Phase 2 trial."); ¶101 ("We have always known that alfimeprase holds the potential to treat a wide range of clot disorders and that acute PAO and catheter occlusion represented the most rapid and low risk market entry strategy for us."); ¶108 ("The Phase 2 results indicate that alfimeprase has the potential to offer significant advances in the rapid resolution of a blood clot. . . . Analysis of the Phase 2 results showed that alfimeprase has the potential to partially or completely break up blood clots within four hours."); ¶116 (The Phase 2 results " demonstrated that alfimeprase can restore arterial blood flow within four hours of initiation of dosing."); ¶120 ("[W]e took a very conservative case when we prepared the [Phase 3 NAPA] trial.") ("[T]he statistical power is still overwhelming for this [Phase 3 NAPA] trial."); *Id*. ("[T]he driver here is not the statistical power for approving efficacy."); *Id*. "[A]lfimeprase . . . is indeed very active based on our Phase 2 studies to date."); *Id*. (Nuvelo's "collaboration with Bayer HealthCare to develop and commercialize alfimeprase continues to go very well, and [that Nuvelo was] tracking to [its] goals and milestones laid out for the program."); ¶124 ("[W]e were very gratified . . . to find that alfimeprase worked very well on big clots and on small clots, and . . . we've had some examples of very large clots, clots up to 60 centimeters in length, that we've dissolved rapidly."); ¶125 (Alfimeprase "worked on what we thought were new clots and old clots."); *Id*. ("[W]e were gratified that in 40% of those patients as well we could see improvements on the angiogram and restoration of blood flow."). *Id*.

[PROPOSED] ORDER DENYING (1) DEFS.' MOTION TO DISMISS CONSOL. COMPL.
FOR VIOLATIONS OF THE FEDERAL SEC. LAWS AND (2) DENYING IN PART AND
GRANTING IN PART DEFS.' REQUEST FOR JUDICIAL NOTICE - 3:07-cv-04056-MJJ       - 14 -

not tethered to facts that a reasonable person would deem important to a securities investment decision.'"). Accordingly, the Court rejects defendants' Motion to Dismiss on this ground as well.

### E. Loss Causation

Defendants do not contend that the Complaint fails to plead loss causation with respect to statements alleged to be misleading by reason of the omission of material facts regarding the ability of the catheter to disrupt clots in PAO patients or the stringent p-value imposed on the Phase 3 CO trial. Accordingly, the Court does not find any support for dismissing the Complaint on this ground.

To the extent defendants seek dismissal on loss causation grounds with respect to defendants' statements regarding the market potential of alfimeprase, the Court finds that defendants' omissions regarding the target market for CO are inextricably linked to the omissions regarding the required p-value for that study, such that loss causation is sufficiently pled for those claims as well. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

### F. Control Person Liability

Given the Court's finding that plaintiffs have adequately pled a §10(b) violation, the Court rejects defendants' argument to dismiss plaintiffs' claims under §20(a) for lack of a predicate violation. The Court further finds that plaintiffs' allegations of control are also sufficient to permit this claim to proceed. ¶¶17-20, 178; *Am. West*, 320 F.3d at 945; *Wool*, 818 F.2d at 1441 ("where . . . the corporate officers are a narrowly defined group charged with the day-to-day operations of a public corporation, it is reasonable to presume that these officers had the power to control or influence the particular transactions giving rise to the securities violation").

## V. CONCLUSION

For the reasons set forth above, the Motion to Dismiss is DENIED and the Request for Judicial Notice is GRANTED IN PART AND DENIED IN PART.

SO ORDERED.

DATED: _____    _____
                                  THE HONORABLE MARTIN J. JENKINS
                                  UNITED STATES DISTRICT JUDGE

Submitted by:

[PROPOSED] ORDER DENYING (1) DEFS.' MOTION TO DISMISS CONSOL. COMPL. FOR VIOLATIONS OF THE FEDERAL SEC. LAWS AND (2) DENYING IN PART AND GRANTING IN PART DEFS.' REQUEST FOR JUDICIAL NOTICE - 3:07-cv-04056-MJJ         - 15 -

DATED: February 4, 2008

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DENNIS J. HERMAN
ELI R. GREENSTEIN


           s/ Dennis J. Herman
            DENNIS J. HERMAN

100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

Liaison Counsel

BERGER & MONTAGUE, P.C.
SHERRIE R. SAVETT
CAROLE A. BRODERICK
BARBARA A. PODELL
PHYLLIS M. PARKER
JOSHUA C. SHUMACHER
1622 Locust Street
Philadelphia, PA  19103
Telephone:  215/875-3000
215/875-4604 (fax)



SCHATZ NOBEL IZARD, P.C.
ANDREW M. SCHATZ
JEFFREY S. NOBEL
NANCY A. KULESA
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT  06103
Telephone:  860/493-6292
860/493-6290 (fax)

Co-Lead Counsel for Plaintiffs

T:\CasesSF\Nuvelo\ORD00048934.doc

[PROPOSED] ORDER DENYING (1) DEFS.' MOTION TO DISMISS CONSOL. COMPL. FOR VIOLATIONS OF THE FEDERAL SEC. LAWS AND (2) DENYING IN PART AND GRANTING IN PART DEFS.' REQUEST FOR JUDICIAL NOTICE - 3:07-cv-04056-MJJ   - 16 -

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 4, 2008.

    s/ Dennis J. Herman
    DENNIS J. HERMAN

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

E-mail:Dennish@csgrr.com

# Mailing Information for a Case 3:07-cv-04056-MJJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Scott Devereaux**
  devereauxsd@cooley.com

- **Grant P. Fondo**
  gfondo@cooley.com,mcintoshjc@cooley.com

- **Dennis J. Herman**
  dennish@csgrr.com,jdecena@csgrr.com,moniquew@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Christopher J. Keller**
  ckeller@labaton.com,cchan@labaton.com

- **Nicole Catherine Lavallee**
  nlavallee@bermanesq.com,ysoboleva@bermanesq.com

- **Phyllis Maza Parker**
  pparker@bm.net

- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com

- **Barbara A Podell**
  bpodell@bm.net

- **David Avi Rosenfeld , Esq**
  drosenfeld@geller-rudman.com

- **Sherrie R. Savett**
  ssavett@bm.net

- **Monique C. Winkler**
  e_file_sd@csgrr.com,shawnw@csgrr.com,travisd@csgrr.com,E_File_SF@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Mario Alba
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road
Suite 200
Melville, NY 11747

Samuel Howard Rudman
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road
Suite 200
New York, NY 11747
```

**Marisa Megur Seifan**
Cooley Godward Kronish LLP
1114 Avenue of Americas
New York, NY 10036

**Evan J. Smith**
Brodsky & Smith L.L.C.
240 Mineola Blvd.
Mineola, NY 11501

**Nicolette Tropiano**
Schiffrin Barroway Topaz & Kessler LLP
280 King of Prussia Road
Radnor, PA 19087