1　COOLEY LLP
　　SCOTT D. DEVEREAUX (146050)
2　(devereauxsd@cooley.com)
　　JESSICA VALENZUELA SANTAMARIA (220934)
3　(jsantamaria@cooley.com)
　　JEFFREY M. KABAN (235743) (jkaban@cooley.com)
4　JENNIFER A. W. BROWN (267836)
　　(jbrown@cooley.com)
5　Five Palo Alto Square
　　3000 El Camino Real
6　Palo Alto, CA  94306-2155
　　Telephone:　(650) 843-5000
7　Facsimile:　(650) 857-0663

8　Attorneys for Defendants
　　NUVELO, INC., MICHAEL D. LEVY, TED W. LOVE
9　and GARY S. TITUS

10　　　　　　　　UNITED STATES DISTRICT COURT

11　　　　　　　　NORTHERN DISTRICT OF CALIFORNIA

12　　　　　　　　SAN FRANCISCO DIVISION

13

| | |
|---|---|
| In re NUVELO, INC. SECURITIES LITIGATION | Master File No.  07-CV-04056-VRW |
| | **CLASS ACTION** |
| | **DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' CLAIM OF PRIVILEGE FOR INADVERTENTLY PRODUCED DOCUMENTS** |
| | Ctrm:　6 |
| | Judge:　Hon. Vaughn R. Walker |

1    Nuvelo, Inc., Michael Levy, Ted Love, and Gary Titus (collectively "Defendants") hereby

2    submit this memorandum responds to this Court's October 13, 2010 order regarding a discovery

3    dispute (the "Order") (Doc # 137 at 2).  In addition, pursuant to the Order, Defendants submit

4    herewith a declaration in support of this memorandum and a privilege log, and are providing the

5    Court with the twelve privileged documents for its review *in camera*.

6    **I.    INTRODUCTION**

7    Describing Defendants' production of documents in this case as "large-scale" does not do

8    it justice.  Defendants collected and reviewed over eleven million hardcopy and electronic pages

9    from various boxes and electronic sources and have produced approximately seven million pages.

10   (Declaration of Jennifer A. W. Brown ("Brown Dec.") ¶ 21.)    Out of this vast universe,

11   Defendants inadvertently produced twelve privileged documents ("Privileged Documents").  (*Id.*

12   ¶¶ 14-15.)  The Privileged Documents memorialize legal updates presented by Lee Bendekgey in

13   his capacity as General Counsel to Nuvelo's Board of Directors.  (*Id.* ¶ 16.)  These documents

14   contain legal opinions, reveal litigation strategies, including the present litigation, and reflect

15   Nuvelo's request for legal advice.  Upon learning of the inadvertent production, Defendants took

16   immediate steps to retrieve the documents from Plaintiffs.  (*Id.* ¶ 18.)  On June 22, 2010 Co-Lead

17   Plaintiffs' Counsel, Izard Nobel LLP, certified that they no longer possessed any copies of the

18   inadvertently produced documents.  (*Id.* ¶ 19.)  Co-Lead Plaintiffs' Counsel Berger & Montague,

19   P.C., however, also have copies of the inadvertently produced documents and have refused to

20   return and or destroy the documents.  (*Id.*)  As a result, Defendants were forced to seek a Court

21   order requiring Plaintiffs to return and/or destroy the Privileged Documents.

22   **II.    FACTUAL BACKGROUND**

23   On November 24, 2009, Plaintiffs served their First Request for the Production of

24   Documents by All Defendants ("Requests") that requested the production of ninety-seven

25   categories of documents.  (*Id.* ¶ 2.)  Given the breadth of Plaintiffs' document demands and the

26   volume of documents Defendants would have to review, the parties agreed that Defendants could

27   produce documents on a rolling basis.  (*Id.* ¶ 3.)  On December 28, 2009, Defendants served their

28   Responses to Requests for the Production of Documents ("Responses"), which included both

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

**DEFENDANTS' MOTION ISO OF PRIVILEGE FOR
INADVERTENTLY PRODUCED DOCUMENTS
CASE NO.  07-CV-04056-VRW**

1    general and specific objections.  (*Id.* ¶ 4.)  Defendants objected to the extent the Requests called

2    for the production of material protected from disclosure by the attorney-client or work-product

3    privilege, stating that such materials would not be produced and that "any inadvertent production

4    thereof shall not be deemed a waiver of any privilege."  (*Id.*)  Along with the Responses,

5    Defendants produced 9,367 pages of documents on a compact disc labeled "Production

6    NUV001."  (*Id.* ¶ 5.)  The parties agreed that documents produced would be treated as "Attorneys

7    Eyes Only" until the parties reached agreement on the terms of a stipulated protected order.  (*Id.*)

8    Despite lengthy negotiations, and agreement on most terms, the parties have yet to finalize a

9    stipulated protective order and are continuing to treat all documents as "Attorneys Eyes Only."

10    (*Id.* ¶ 6.)

11         After the initial production, Defendants continued to review and produce documents.

12    (*Id.* ¶ 7.)  Ultimately, Defendants compiled a team of ten associates from Cooley LLP and sixty-

13    five contract attorneys.  (*Id.* ¶ 8.)  In total, Defendants' team reviewed and analyzed more than

14    two million documents over a nine month period.  (*Id.* ¶ 9.)  Each document was reviewed page-

15    by-page by at least one attorney to determine whether the document was responsive, whether it

16    contained confidential information, whether it was privileged and, if it was privileged or

17    otherwise subject to protection, whether redactions were necessary and the extent of such

18    redactions.  (*Id.* ¶ 10.)  Each attorney reviewer was instructed to consult with mid- level

19    associates on any questions regarding privilege and mid-level associates were instructed to

20    consult with senior-level associates if any privilege questions remained.  (*Id.* ¶ 11.)  For the

21    review of electronic documents, Defendants employed the use of software to highlight various

22    "privilege terms", including among other things the names of all known attorneys, attorney email

23    addresses, and frequently used legal terms.  (*Id.* ¶ 12.)  If, after first-level review, a document was

24    determined to be privileged or potentially privileged, it was reviewed a second time by a different

25    attorney until privilege issues were resolved.  (*Id.*)  Furthermore, at least one Cooley associate

26    performed a quality control review of each batch of documents in which a random sample of

27    documents marked for production was re-reviewed for privilege.  (*Id.* ¶ 13.)

28         On June 14, 2010, Defendants discovered that, despite the document review protocols in

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

DEFENDANTS' MOTION ISO OF PRIVILEGE FOR
INADVERTENTLY PRODUCED DOCUMENTS
CASE NO.  07-CV-04056-VRW

1    place, a four-page privileged document memorializing legal updates provided by Nuvelo's

2    General Counsel, Lee Bendekgey, to Nuvelo's Board of Directors, had been inadvertently

3    produced. (*Id.* ¶ 14.) That same day, Defendants' counsel searched prior production populations

4    and determined that eleven other legal updates had been inadvertently produced to Plaintiffs,

5    though several other legal-update documents were withheld for privilege. (*Id.* ¶ 15.) On June 15,

6    2010, Defendants counsel sent both Co-Lead Plaintiffs' Counsel a letter explaining that twelve

7    privileged documents had been inadvertently produced, and requesting that Plaintiffs return or

8    destroy the inadvertently produced files and the media on which they were produced. (*Id.* ¶ 18.)

9    While one Plaintiffs' counsel firm complied with the request, Berger & Montague has not.

10   Defendants requested leave from the Court to compel Plaintiff, Berger & Montague to return

11   and/or destroy the Privileged Documents. (*Id.* ¶ 19.)

12   **III.    THE INADVERTENTLY PRODUCED DOCUMENTS ARE PRIVILEGED**

13       The Privileged Documents, which reflect communications and advice from Nuvelo's

14   general counsel to its board of directors, are protected by the attorney-client privilege and

15   Plaintiffs should be compelled to return them. The attorney-client privilege plays a critical role in

16   the judicial system. In fact, "[t]he attorney-client privilege is the oldest of the privileges for

17   confidential communications known to the common law." *Upjohn v. United States*, 449 U.S.

18   383, 389 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961).) "Its purpose is

19   to encourage full and frank communication between attorneys and their clients and thereby

20   promote broader public interests in the observance of law and administration of justice. The

21   privilege recognizes that sound legal advice or advocacy serves public ends and that such advice

22   or advocacy depends upon the lawyer's being fully informed by the client." *Id.*

23       Federal common law recognizes an attorney-client privilege that protects a client's

24   confidential communications with an attorney, even in the face of discovery, when the purpose of

25   such communication is to obtain legal advice. 6 James Wm. Moore, *Moore's Federal Practice*,

26   Civil § 26.49 (2010). In addition, "[a]n attorney's communications to a client may also be

27   protected by the privilege, to the extent that they contain or are based on confidential information

28   provided by the client, or legal advice or opinions of the attorney." *Phoenix Solutions Inc. v.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

DEFENDANTS' MOTION ISO OF PRIVILEGE FOR
INADVERTENTLY PRODUCED DOCUMENTS
CASE NO. 07-CV-04056-VRW

1    *Wells Fargo Bank, NA*, 254 F.R.D. 568, 575 (N.D. Cal. 2008) (citing *U.S. v. Margolis*, 557 F.2d

2    209, 211(9th Cir. 1977)).

3            As the Court will see in its *in camera* review, the Privileged Documents consist of

4    attorney-client communications.  All twelve Privileged Documents memorialize the advice and

5    opinions of Lee Bendekgey, in his capacity as General Counsel, to the Board of Directors at

6    Nuvelo's Regular Meetings of the Board of Directors.  (Brown Dec. ¶ 16.)  These meetings were

7    limited in attendance to the Board Members, certain company employees, and for portions of

8    some meetings, retained experts such as outside counsel.  The Privileged Documents were kept as

9    part of a Board Book, which Nuvelo kept confidential and did not disclose to competitors or the

10   general public.  Additionally, Nuvelo took reasonable steps to protect its confidential information,

11   including requiring all Board members and employees to sign non-disclosure agreements.  While

12   the specific subject matter of each document varies, they share the same characteristics that

13   render them attorney-client privileged—they contain legal opinions, reveal confidential legal

14   strategy with respect to the present litigation, and include Mr. Bendekgey's response to his

15   client's requests for information.  Furthermore, Mr. Bendekgey communicated the information at

16   Board meetings.  This type of communication falls squarely within the attorney-client privilege.

17   *Admiral Ins. Co. v. District Court,* 881 F.2d 1486, 1492 (9th Cir. 1989) (citing *Upjohn***,** 449 U.S.

18   at 394) (finding that the attorney-client privilege applies to communications in the corporate

19   context when the communications concern matters within the scope of the employee's corporate

20   duties).

21           For example, the Privileged Documents memorialize Mr. Bendekgey's legal opinions

22   regarding several Nuvelo compliance policies.  Such opinions reflect Mr. Bendekgey's legal

23   advice regarding internal controls and guidelines to insure compliance with the law.  "If the

24   privilege did not protect such communications, a client would be less willing to share information

25   requested by attorneys whose goal is to avoid litigation and alter potentially illegal corporate

26   conduct."  *Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 212 (E.D. Pa. 2008); *See also*

27   *Upjohn*, 449 U.S. at 392 (finding that if privilege did not apply to communication between

28   employees and in-house counsel, it would limit efforts of corporate counsel to ensure compliance

Cooley LLP
Attorneys At Law
Palo Alto

4

DEFENDANTS' MOTION ISO OF PRIVILEGE FOR
INADVERTENTLY PRODUCED DOCUMENTS
CASE NO.  07-CV-04056-VRW

with the law).

In addition to legal advice regarding Nuvelo compliance policies, the Privileged Documents reveal confidential legal strategy, including Nuvelo's approach to the present litigation.  Correspondence that reveals "…the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege." *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127 (9th Cir. 1992) (citing *In re Grand Jury Witness (Salas and Waxman)*, 695 F.2d 359, 362 (9th Cir. 1982)).

Lastly, the Privileged Documents require protection from disclosure as they reflect the substance of Nuvelo's confidential communications with Mr. Bendekgey.  A review of the content of the documents illuminates what activities Nuvelo deemed important enough for Mr. Bendekgey to communicate to the Board.  "The privilege ordinarily extends also to the attorney's response to the client's request for legal advice because such response usually effectively reveals the substance of the client's confidential communication to the attorney." *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).  The fact that the Privileged Documents reveal the substance of Nuvelo's confidential requests to counsel deems them worthy of protection from disclosure by the attorney-client privilege.  For all the reasons stated above, the Privileged Documents deserve protection from disclosure by the attorney-client privilege.

## IV. THE INADVERTENT PRODUCTION OF THE PRIVILEGE DOCUMENTS DID NOT ACT AS A WAIVER

Plaintiffs have suggested that Defendants have waived the privilege by inadvertently producing the Privileged Documents.  (Doc # 136 at 1-2.)  Plaintiffs' assertion is supported by neither the law nor the facts[1].  Given the fundamental importance of the attorney-

---

[1] In fact, Plaintiffs repeatedly disregarded their obligations under the Federal Rules throughout this dispute.  Rule 26(b)(5)(B) requires that after being notified of the inadvertent production of privileged documents, "a party must promptly return, sequester or destroy the specified information and any copies it has . . . ."  Fed. R. Civ. P. 26(b)(5)(B).  Plaintiffs argue that they have complied with their obligation by "sequestering" the Privileged Documents.  (Doc. # 136 at 1.)  However, Plaintiffs have never confirmed that they sequestered the Privileged Documents.  Furthermore, it is clear from Plaintiffs' descriptions of the contents of the Privileged Documents, that Plaintiffs have not sequestered the material.  (*Id.*).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5

DEFENDANTS' MOTION ISO OF PRIVILEGE FOR
INADVERTENTLY PRODUCED DOCUMENTS
CASE NO. 07-CV-04056-VRW

1   client privilege to our legal system, the waiver of such an important protection is not to be taken

2   lightly. *See Chore-Time Equip., Inc. v. Big Dutchman, Inc.*, 255 F.Supp 1020, 1021 (W.D. Mich.

3   1966) (stating that "it generally is acknowledged that the attorney-client privilege is so sacred and

4   compelling that the courts must, within their limits, guard it jealously").    Federal Rule of

5   Evidence 502(b) sets forth a three-factor test to determine whether privilege has been waived by

6   inadvertent disclosure.    Under Rule 502(b), an inadvertently produced document retains it

7   privilege "if: (1) the disclosure is inadvertent, (2) the holder of the privilege or protection took

8   reasonable steps to prevent disclosure, and (3) the holder promptly took reasonable steps to

9   rectify the error . . . ." *Infor Global Solutions, Inc v. St. Paul Fire & Marine Ins. Co.*, No. C 08-

10  02621 JW (PVT), 2009 U.S. Dist. LEXIS 71370, at *5 (N.D. Cal. Aug. 3, 2009) (citing Fed. R.

11  Evid. 502(b)).    In addition to the Rule 502(b) factors, courts also consider the scope of discovery,

12  time-restraints on production, the extent of disclosure, and overriding issues of fairness in

13  determining whether a waiver occurred.    Fed. R. Evid. 502(b) advisory committee's note (citing

14  *Hartford Fire Insurance Co. v. Garvey*, 109 F.R.D. 323, 332 (N.D. Cal. 1985)).

15        Here, the production of the Privileged Documents was inadvertent as Defendants did not

16  intentionally waive the privilege.    (Brown Dec. ¶ 17.)    In addition, Defendants took numerous

17  steps to prevent disclosure of privileged documents, including the use of software to highlight

18  certain terms likely to appear in privileged documents and re-reviewing a random sample of

19  documents in each production set.    (*Id.* ¶¶ 12-13).    Defendants also acted quickly to rectify the

20  error by altering Plaintiffs of the inadvertent production and requesting return of the Privileged

21  Documents within a day of discovering the error.    (*Id.* ¶ 18.)

22        Lastly, other considerations weigh against a finding of waiver.    Plaintiffs served ninety-

23  seven document demands seeking broad categories of documents practically bearing on every

24  aspect of Nuvelo's business.    (*Id.* ¶ 2.)    In response to these requests, Defendants collected and

25  reviewed hard copy documents from 797 boxes, equaling roughly 797,000 pages.    (*Id.* ¶ 9.)

26  Defendants also collected and reviewed over two million electronic documents.    (*Id.*)    By the time

27  the last of the Privileged Documents was inadvertently produced, an internal team of ten Cooley

28  attorneys conducted the review and spent approximately 1,500 hours reviewing documents for

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

DEFENDANTS' MOTION ISO OF PRIVILEGE FOR
INADVERTENTLY PRODUCED DOCUMENTS
CASE NO. 07-CV-04056-VRW

production and produced over 300,000 documents.  (*Id.* ¶ 20.)  Defendants ultimately produced over 7 million pages of documents.  (*Id.* ¶ 21.)  The entire collection, review, and production process took approximately nine-months, involved over eighty attorneys and required more than 10,000 hours of effort.  (*Id.*)  Such efforts heavily support a finding that Defendants did not waive privilege by inadvertently producing the Privileged Documents.  Rule 26(b)(5)(B), which requires the return or destruction of inadvertently privileged documents, was designed for just this purpose—to provide parties with a mechanism to claw-back privileged documents mistakenly produced in large-scale electronic document productions.  6 James Wm. Moore, *Moore's Federal Practice,* Civil § 26.91 (2010).  This is such a case.

## V.    CONCLUSION

For the foregoing reasons, Defendants' request for a protective order requiring Plaintiffs to (a) permanently destroy all hard copies or electronic copies of the twelve inadvertently produced privileged documents, (b) return all copies of the media in which twelve privileged documents were produced (labeled "Productions NUV001, NUV002 and NUV005"), and (c) order that Plaintiffs refrain from using the privileged documents or the information contained therein in any proceeding should be granted.

Dated: November 4, 2010                    COOLEY LLP


By _____/s/_____
Jessica Valenzuela Santamaria

Attorneys for Defendants
NUVELO, INC., MICHAEL D. LEVY, TED W. LOVE and GARY S. TITUS

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

DEFENDANTS' MOTION ISO OF PRIVILEGE FOR
INADVERTENTLY PRODUCED DOCUMENTS
CASE NO.  07-CV-04056-VRW