**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Carole A. Broderick
Phyllis M. Parker
Jacob M. Polakoff
1622 Locust Street
Philadelphia, PA  19103
Tel: (215) 875-3000
Fax:  (215) 875-4604
Email: ssavett@bm.net
      cbroderick@bm.net
      pparker@bm.net
      jpolakoff@bm.net

**IZARD NOBEL LLP**
Jeffrey S. Nobel
Mark P. Kindall, Bar No. 138703
Nancy A. Kulesa
29 South Main Street
Suite 215
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
Email: jnobel@izardnobel.com
      mkindall@izardnobel.com
      nkulesa@izardnobel.com

**ROBBINS GELLER RUDMAN
 & DOWD LLP**
Darren J. Robbins
Joy A. Bull
Dennis J. Herman
Eli R. Greenstein
S. Ashar Ahmed
Post-Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Tel: (415) 288-4545
Fax: (415) 288-4534
Email: darrenr@rgrdlaw.com
      jbull@rgrdlaw.com
      dennish@rgrdlaw.com
      elig@rgrdlaw.com
      aahmed@rgrdlaw.com

*Lead Counsel for Plaintiffs*

*Liaison Counsel*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

In re NUVELO, INC. SECURITIES
LITIGATION

Master File No.  07-CV-04056-VRW

<u>CLASS ACTION</u>

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL**

DATE:  April 1, 2011
TIME:  10:00 a.m.
COURTROOM:  8

1

**TABLE OF CONTENTS**

2

3    TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iii

4    NOTICE OF MOTION AND MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    vi

5    STATEMENT OF ISSUES TO BE DECIDED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    vi

6    SUMMARY OF ARGUMENT   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    vii

7    MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . .    1

8    PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

9    ARGUMENT   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

10    I.       THE SETTLEMENT MERITS PRELIMINARY APPROVAL . . . . . . . . . . . . . .    4

11

12        A.     The Settlement Is the Result of a Thorough, Rigorous and Adversarial Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

13        B.     The Proposed Settlement Is "Within the Range of Possible Approval" . .    6

14             1.      The Unlikelihood of Satisfying a Larger Judgment . . . . . . . . . .    6

15             2.      Risks Relating to Establishing Liability . . . . . . . . . . . . . . . . . . .    7

16             3.      Risks In Establishing Loss Causation and Damages . . . . . . . . . .    8

17        C.     The Proposed Settlement Has "No Obvious Deficiencies"   . . . . . . . . . .    11

18    II.      CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER   . . . . . . . . .    13

19    III.     THE PROPOSED SETTLEMENT NOTICE SATISFIES RULES 23(d) AND (e) AND DUE PROCESS REQUIREMENTS . . . . . . . . . . . . . . . . . . . .    13

20

21    IV.     PROPOSED SCHEDULE OF EVENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

22    CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3

*Cases*

4   *Churchill Village LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004) . . . . . . . . . . . . . .   7

5   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 4, 11

6   *Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

7   *In re Convergent Tech. Sec. Litig.*, 948 F.2d 507 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . .   7

8   *In re CV Therapeutics, Inc., Sec. Litig.*, No. C 03-3709 SI, 2007 WL 1033478
9       (N.D. Cal. April 4, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

10  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) . . . . . . . . . . . . . . . . . . . . . .   12

11  *Edwards v. City of Colfax*, No. CIV S-07-2153 GEB EFB, 2011 WL 572171
12      (E.D. Cal. Feb. 15, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

13  *In re Enron Corp. Sec. and ERISA Litig.*, No. H-01-3624, 2003 WL 22494413
        (S.D. Tex. July 24, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

14  *In re Enron Corp. Sec., Derivative and "ERISA" Litig.*, 586 F. Supp. 2d 732
15      (S.D. Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

16  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) . . . . .   5

17  *Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) . .   6

18  *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) . . . . . . . . . .   11

19  *In re Indep. Energy Holdings PLC*, 2003 WL 22244676 (S.D.N.Y.2003) . . . . . . . . . . . . . .   6

20  *Int'l Longshore & Warehouse Union, Local 142, v. C. Brewer and Co., Ltd.*,
21      No. CV 06-00260 SOM LEK, 2007 WL 4145228 (D. Hawai'i Nov. 20, 2007) . . . .   6

22  *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338 (9th Cir. 1980) . . . . . . . . . . . . . . . . .   14

23  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) . . . . . . . . . . . . 14, 15

24  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) . . . . . . . . . . . . . . . . .   14

25  *In re Nuvelo, Inc. Sec. Litig.*, No. C-07-4057 (VRW), 2008 U.S. Dist. LEXIS 98441
26      (N.D. Cal. Dec. 4, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

27  *In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217 (N.D. Cal. 2009) . . . . . . . . . . . . . . 2, 9, 10

28

*In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS),
    2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5, 12

*In re OCA, Inc. Sec. and Derivative Litig.*, No. 05-2165, 2008 WL 4681369
    (E.D. La. Oct. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*In re Omnivision Techs., Inc.*, No. C-04-2297 SC, 2007 WL 4293467
    (N.D. Cal. Dec. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054
    (N.D. Cal. June 16, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) . . . . . . . . . . . . . . .   10

*Satchell v. Federal Express Corp.*, Nos. C03-2659 SI, C 03-2878 SI,
    2007 WL 1114010 (N.D. Cal., April 13, 2007) . . . . . . . . . . . . . . . . . . . . . . . . .   5, 6

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . .   8

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) . . . . . . . . . . .   5

*West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH,
    2006 WL 1652598 (E.D. Cal. June 13, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . .   5

*In re Williams Sec. Litig.*, No. 02-cv-072-SPF-FHM, 2007 WL 2007987
    (N.D. Okla. July 6, 2007), *aff'd*, 558 F.3d 1130 (10th Cir. Feb. 18, 2009) . . . . . .   10

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980
    (D. Minn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Young v. Polo Retail LLC*, No. C-02-4546 (VRW), 2006 WL 3050861
    (N.D. Cal., Oct. 25, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 11

**Statutes**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78r-4 *et seq.* . . . . . . . . . vii, 1, 15

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(4) . . . . . . . . .   11

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7) . . . . . . . . . .   15

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C.A. § 78j(b) . . . . . . . . . . . . .   1

Securities Exchange Act of 1934, Section 20(a), 15 U.S.C. § 78t(a) . . . . . . . . . . . . . . .   1

**Regulations**

SEC Rule 10 b-5, 17 C.F.R. § 240.10b-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

1

*Federal Court Rules*

2

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

3

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii, 1, 15

4

Fed. R. Civ. P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   vi

5

Fed. R. Civ. P. 23 (b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   vi, 13

6

Fed. R. Civ. P. 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

7

Fed. R. Civ. P. 23(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

8

Fed. R. Civ. P. 23(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

9

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

10

Fed. R. Civ. P. 23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

11

Fed. R. Civ. P. 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

12

*Other Authorities*

13

Manual for Complex Litigation, Second § 30.44 (1985) . . . . . . . . . . . . . . . . . . . . . . . . .   5

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on April 1, 2011 at 10:00 a.m., before the Honorable Charles Breyer, movants herein will ask this Court for an order (1) preliminarily approving a proposed Class Action Settlement; (2) preliminarily certifying a Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (3), appointing Juan Pablo Cabrera, Frank C. Petronis,  Patricia A. Petronis, Todd A. Stephens and Amy A. Stephens as Settlement Class Representatives; (4) appointing Berger & Montague, P.C. and Izard Nobel, LLP, as Settlement Class Counsel; and appointing Robbins Geller Rudman & Dowd, LLP as Liaison Counsel; (5) approving notice to the Settlement Class; and (6) setting a date for a final approval hearing.  This motion is supported by the following memorandum of points and authorities, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

### STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the proposed Class Action Settlement merits preliminary approval;

2.     Whether the Court should preliminarily certify a Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

3.     Whether Juan Pablo Cabrera, Frank C. and Patricia A. Petronis, and Todd A. and Amy A. Stephens should be appointed as Settlement Class Representatives;

4.     Whether Berger & Montague, P.C. and Izard Nobel LLP, should be appointed as Settlement Class Counsel, and whether Robbins Geller Rudman & Dowd LLP should be appointed as Liaison Counsel;

5.     Whether the Court should approve notice to the Settlement Class and set a date for a final approval hearing.

1

## SUMMARY OF ARGUMENT

2          After four years of hard-fought litigation, the Parties to this securities fraud class action have

3    reached a settlement agreement (the "Settlement") that would require Defendants to pay eight

4    million, nine hundred sixteen thousand, six hundred sixty-six dollars and seventy cents

5    ($8,916,666.70) to the Settlement Class, on terms set forth in a Stipulation   Settlement dated

6    February 25, 2011 (the "Stipulation").[1]  In accordance with the applicable provisions of the Federal

7    Rules of Civil Procedure, Plaintiffs respectfully request that the Court grant preliminary approval,

8    preliminarily certify a Settlement Class, authorize notice to the Settlement Class, and set a date for a

9    hearing on the adequacy and fairness of the Settlement.

10         The Settlement merits preliminary approval.   The course of the litigation and of the

11   mediation unequivocally demonstrates that the Settlement is the result of a thorough and adversarial

12   process.  Moreover, the amount of the Settlement, at just under $9 million, is more than reasonable

13   in light of the risks of continued litigation – especially the risk that continued litigation would mean

14   that the funds available to satisfy a judgment in  favor of Plaintiffs would be *less* than the amount of

15   the Settlement.   The Proposed Plan of Allocation ensures a fair *pro rata* distribution of the

16   Settlement to all Settlement Class Members injured by the fraud alleged in the Complaint, and Lead

17   Plaintiffs are treated the same as all members of the Proposed Settlement Class.

18         Preliminary certification of a Settlement Class is appropriate as well.  Plaintiffs extensively

19   briefed a motion for Class Certification filed on December 15, 2010, and Defendants do not oppose

20   certification for purposes of the Settlement (while reserving their right to object to Class

21   Certification in the event that the Settlement is not approved).  Lead Plaintiffs, who have overseen

22   this litigation since its inception, should be appointed as Settlement Class Representatives, and

23   Plaintiffs' counsel – Lead Counsel Izard Nobel LLP and Berger and Montague, P.C., together with

24   Liaison Counsel Robbins Geller Rudman and Dowd LLP – should be appointed as counsel for the

25   Settlement Class.

26   _____

27   [1]   A copy of the Stipulation is attached as Exhibit A to the Declaration of Mark P. Kindall (the
     "Kindall Decl.") in Support of Plaintiffs' Motion for Preliminary Approval.

28

1    Finally, Plaintiffs proposed notice to the Settlement Class is reasonable, meets all legal

2  requirements, and should be approved.  Plaintiffs propose to give interested parties notice by first-

3  class mail and by publication in the National Edition of *Investors Business Daily* and electronically

4  over *PRNewswire* or *Business Wire*.   In addition, Plaintiffs propose to make information concerning

5  the Settlement available on a dedicated website.  Plaintiffs have proposed a schedule which gives

6  Settlement Class Members ample opportunity to review all of the papers filed in support of final

7  approval of the Settlement and of the requests for attorneys' fees, costs and expenses and for awards

8  to Lead Plaintiffs before having to decide whether to file objections or opt-out of the settlement.

9  Finally, the content of the notice also meets all of the requirements of both the Private Securities

10  Litigation Reform Act of 1995 and Federal Rule 23.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2   In order to effectuate the $8,916,666.70 Settlement in accordance with Rule 23 of the Federal

3   Rules of Civil Procedure, Plaintiffs respectfully request that the Court (1) preliminarily approve the

4   Settlement, (2) schedule a hearing date (the "Final Hearing Date") to consider whether to grant final

5   approval of the Settlement and the application by Plaintiffs' counsel for an award of attorneys' fees,

6   and reimbursement of costs and expenses and for awards to Lead Plaintiffs (the "Fee and Expense

7   Application"), (3) preliminarily certify a class for settlement purposes (the "Settlement Class"), and

8   (4) direct the dissemination of notice of the Settlement and the Final Hearing Date to the members of

9

10  the Settlement Class.  For the reasons set forth below, the Joint Motion should be granted.

11

## PROCEDURAL BACKGROUND

12   This class action for violations of Section 10(b) and 20(a) of the Securities Exchange Act of

13  1934 (the "Exchange Act") and Rule 10 b-5 promulgated thereunder against Nuvelo, Inc. ("Nuvelo"

14  or the "Company") and three of its principal officers,[2] brought on behalf of a class of purchasers of

15

16  Nuvelo securities between January 5, 2006 and December 8, 2006, commenced with the filing of

17  four actions in the District Court for the Southern District of New York beginning in February of

18  2007.  Over the next ten months, the actions were transferred to the Northern District of California,

19

20  where Judge Jenkins consolidated the cases and appointed lead plaintiffs and lead and liaison

21  counsel.  Lead Plaintiffs filed their Consolidated Complaint on November 9, 2007.  On December

22  21, 2007, Defendants moved to dismiss that complaint under the Private Securities Litigation

23  Reform Act ("PSLRA") and Fed. R. Civ. P. 9(b).

24

25

26  [2]  Those officers are Ted W. Love, Nuvelo's Chief Executive Officer and Chairman of the Board;
    Gary S. Titus, Vice President of Finance, Chief Accounting Officer and Chief Financial Officer; and

27  Michael D. Levy, Senior Vice President of Research and Development.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT     1
07-CV-04056-CRB

1   While Defendants' motion to dismiss was pending, the case was reassigned to Chief Judge

2   Vaughn R. Walker.  Judge Walker granted Defendants' motion, without prejudice, on December 4,

3   2008, approximately one year after the motion was filed and almost two years after the actions were

4   filed. *In re Nuvelo, Inc. Sec. Litig.*, No. C-07-4057 (VRW), 2008 U.S. Dist. LEXIS 98441 (N.D. Cal.

5   Dec. 4, 2008).  Plaintiffs filed an amended complaint, (the "Complaint") which Defendants again

6   moved to dismiss.  The Court denied the motion in substantial part on August 17, 2009, in an

7   opinion that demonstrated the complexities of a case involving biostatistics and FDA standards.  *In*

8   *re Nuvelo, Inc. Sec. Litig.* 688 F. Supp. 2d. 1217 (N.D. Cal. 2009).

9   The Complaint alleges that Nuvelo, a company engaged in testing drugs, misrepresented and

10  omitted material facts concerning its lead drug, alfimeprase, a blood clot dissolver which it claimed

11  was faster and safer than other blood clot dissolvers.  Nuvelo was testing alfimeprase as a treatment

12  for two conditions (1) acute peripheral arterial occlusion ("PAO"), in which a blood clot blocks

13  circulation in the patient's leg, and (2) catheter occlusion ("CO") which is blockage of catheters used

14  to administer drugs and withdraw blood, which is caused primarily by blood clots, but also due to

15  other causes.  In particular, Plaintiffs claim that Defendants (1) misrepresented the results of the first

16  PAO trial; (2) misrepresented facts about the design of the second PAO trial and the expected results

17  in the placebo group in that trial; and (3) misrepresented and concealed facts about the extraordinary

18  statistical standard that governed the acceptability of the results of the CO trial.  Plaintiffs claim that

19  before the market opened on December 11, 2006, Defendants disclosed that the Phase 3 CO and

20  PAO clinical trials had failed due to the facts Lead Plaintiffs alleged were misrepresented and

21  concealed by Defendants, and that the price of Nuvelo stock price dropped, causing damages to the

22  Settlement Class.

23  Discovery began in November 2009.  By October, 2010, Plaintiffs reviewed and analyzed

24  more than 5 million pages of documents produced by Defendants in response to Plaintiffs' discovery

25  requests, and were, therefore, well aware of the strengths and weaknesses of their claims.  Discovery

26  also revealed that funds available to satisfy a judgment were limited.  Nuvelo merged with ARCA

27  biopharma, Inc. ("ARCA") in January 2009 in a transaction in which ARCA was the surviving

28  company.  Although Nuvelo had $158 million of cash and cash equivalents at the end of 2006, by

1   the end of 2009, virtually all of that had been spent, and ARCA's auditor opined on the Company's

2   2009 financial statements that there was doubt that ARCA could even continue as a going concern.

3   Accordingly, the only real sources of funds to pay a judgment were Nuvelo's insurance policies –

4   five policies of $5 million each.  Worse, Nuvelo obtained the top two layers of those policies in

5   August 2006, seven months after the beginning of the class period, during the period of the alleged

6   fraud, when the other three policies were renewed.  Thus, it was altogether likely that those insurers

7   would assert a "fraud exclusion" policy defense.  As a result, Plaintiffs could only be assured that

8   there would be $15 million of insurance to pay the claims of the class as well as the fees of

9   Defendants' lawyers and Defendants' litigation expenses.

10          As discovery progressed, Plaintiffs were aware that Defendants were spending many millions

11   of dollars of available insurance in defense of the action.  Defendants' counsel informed the Court

12   that they had reviewed, not only the millions of pages of documents produced to Plaintiffs, but many

13   millions of pages that were not produced.  Indeed, Defendants' counsel stated that eighty lawyers for

14   Defendants spent more than 10,000 hours reviewing more than 11 million pages of documents.  That

15   10,000 hours did not comprise all of the time spent by Defendants' counsel on document review.

16   After documents were produced to Plaintiffs, Defendants performed a further review, which led

17   them to conclude that certain documents which had been produced months earlier in several of the

18   document productions were inadvertently produced and were privileged attorney-client

19   communications.[3]  Moreover, these 10,000 hours did not even factor in the time spent in briefing and

20   arguing motions, the extensive correspondence and teleconferences concerning discovery, the case

21   management order, a protective order, the motions pending before the Court, Plaintiffs' attempts to

22   obtain discovery by means of Rule 30(b)(6) and to learn the true facts regarding Nuvelo's inability to

23   identify back-up tapes and missing disc drives.  Thus, the amount of time Defendants' counsel had

24   spent on the litigation was greatly in excess of 10,000 hours, and billing rates for San Francisco area

25

26   [3]   When Plaintiffs argued that Defendants had not adequately supported either their claim of
27   privilege or inadvertence, Defendants moved the Court for an Order requiring Plaintiffs to return or
     destroy the documents. (No. 140).

28

1   attorneys typically *start* at around $300 per hour and go up from there.  *See, e.g., Edwards v. City of*

2   *Colfax,* No. CIV S-07-2153 GEB EFB, 2011 WL 572171, at * 8 (E.D. Cal. Feb. 15, 2011) (finding

3   billing rates from $290 per hour to $550 per hour were typical for San Francisco attorneys).

4   Furthermore, Plaintiffs knew that the litigation was about to enter a phase that would be even more

5   intensive and expensive than what had gone before.  The parties were entitled to take 175 hours of

6   fact depositions each, and needed to take expert discovery (which would include medical experts,

7   biostatistical experts, experts in FDA requirements and damages experts), litigate the class

8   certification motion and likely motions for summary judgment, prepare for and go through a multi-

9   week jury trial.  Thus, it was apparent that the cost of defending the suit would consume millions and

10  millions of dollars in addition to the many millions that had already been spent to pay Defendants'

11  counsel fees and expenses to date.

12          In light of this reality, the parties agreed that it would be worthwhile to explore the possibility

13  of settlement, and to engage the services of a mediator to facilitate that process.  The parties retained

14  former federal District Judge Layn R. Phillips for that purpose.  They prepared and exchanged

15  mediation submissions which included detailed factual analyses and supporting evidence.  A

16  mediation session held by Judge Phillips on October 27, 2010, which was attended by

17  representatives of all the parties and all of the insurance carriers proved to be unsuccessful.  Judge

18  Phillips continued to work with the parties and the insurance carriers over the next two months while

19  the parties continued to litigate the case, including the filing of a Motion for Class Certification,

20  which remains pending.  Finally, on December 29, 2010, as a result of Judge Phillips continuing

21  efforts, the parties reached an agreement in principle on the terms of the settlement.  Between

22  December 29 and February 25, 2011, the parties negotiated the detailed terms of the Stipulation of

23  Settlement, which was signed on February 25, 2011.

24                                              **ARGUMENT**

25  **I.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

26          Strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle,*

27  955 F.2d 1268, 1276 (9th Cir. 1992); *In re NVIDIA Corp. Derivative Litig.,* No. C-06-06110-SBA

28

(JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008); *West v. Circle K Stores, Inc.,* No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *1 (E.D. Cal. June 13, 2006).  Settlements are particularly favored "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *NVIDIA,* 2008 WL 5382544, at *2 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995)).

Approval of class action settlements normally proceeds in two stages:  preliminary approval followed by notice to the class, and then final approval.  *See, e.g., Id.; see also West,* 2006 WL 1652598, at *2.  This case is now at the first stage of the process.  Standards governing whether preliminary approval should be granted have "both a procedural and a substantive component." *Young v. Polo Retail LLC,* No. C-02-4546 (VRW), 2006 WL 3050861, at *5 (N.D. Cal., Oct. 25, 2006).  As the *Young* court explained,

> "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . ." Manual for Complex Litigation, Second § 30.44 (1985).

*Id.*[4]  Applying the standards set forth above, the Settlement should be preliminarily approved.

**A.  The Settlement Is the Result of a Thorough, Rigorous and Adversarial Process**

The procedural history of this clearly demonstrates vigorous litigation and an adversarial relationship between the parties, including two motions to dismiss,  intensive negotiation  about the appropriate scope of discovery (there are over one hundred  pieces of correspondence between the

---

[4] *See also In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (same); *NVIDIA,* 2008 WL 5382544, at *2 (reviewing both the process by which settlement was obtained, and the fairness of the settlement in light of the obstacles to success at trial);  *Satchell v. Federal Express Corp.,* Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal., April 13, 2007) (granting preliminary approval after finding proposed settlement was non-collusive, had no obvious defects and was within the range of possible settlement approval).

parties' counsel during the 12-month period from December, 2009 to December, 2010 concerning Plaintiffs' discovery requests, Plaintiffs' 30(b)(6) deposition notices and Defendants' requests for disclosure and production).  Moreover, Plaintiffs filed a detailed motion for Class Certification supported by lengthy factual and expert submissions.  Demonstrably this settlement is not the product of any sort of collusion.  Moreover, the mediation process itself was clearly adversarial.  As this Court has found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell,* 2007 WL 1114010, at *4.[5]  This is all the more true given the fact that the parties were unable to reach agreement at the October 27, 2010 mediation session.  *See, e.g., Hicks v. Stanley,* No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("[a] breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.").

### B.  The Proposed Settlement Is "Within the Range of Possible Approval"

The amount of the proposed $8,916,666.70 is well within the range of approval, particularly because a larger recovery for the Settlement Class is highly improbable.

### 1.    The Unlikelihood of Satisfying a Larger Judgment

As set forth above, further litigation in this case could not have resulted in a larger recovery for the Settlement Class, even if it had produced a larger judgment.  ARCA's auditor warned of substantial doubt as to whether the Company could continue as a going concern, and thus there was no likelihood that the Company would survive to contribute to a judgment if Plaintiffs took the case to trial.  Of Nuvelo's $25 million of insurance, two of the policies, totaling $10 million, could be

---

[5] *See also Int'l Longshore & Warehouse Union, Local 142, v. C. Brewer and Co., Ltd.,* No. CV 06-00260 SOM LEK, 2007 WL 4145228, at *2 (D. Hawai'i Nov. 20, 2007) ("assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *In re Indep. Energy Holdings PLC,* 2003 WL 22244676, at *4 (S.D.N.Y. 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

subject to a fraud exclusion defense since they were purchased during the period of the alleged fraud. Whether there was $15 million in insurance at the outset or $25 million, however, it was clear that a substantial amount of insurance had already been consumed in defense litigation costs.  Given the complexity of the case, and given that the parties had not begun fact depositions, expert discovery, litigation of the pending class certification motion or summary judgment motions, it was apparent that litigation costs would preclude a larger recovery for the Settlement Class if the case was pursued through trial and to a verdict.  In addition, it would be necessary for the Settlement Class to incur costs of its own to obtain that recovery, because Plaintiffs would have the same deposition costs and the same extremely expensive experts as would Defendants.  As a result, not only would the amount received from Defendants be less, but the deductions from that amount for Plaintiffs' litigation expenses would be larger, leading to an even smaller net recovery.  The proposed Settlement, thus, produces the largest possible recovery for the class.  Moreover, further litigation is not without risk. A trial might result in no recovery at all.  The risk, expense, complexity and likely duration of further litigation strongly support approval of a settlement. *Churchill Village LLC v. General Electric*, 361 F.3d 566, 576 (9th Cir. 2004).  These factors are particularly apparent here and provide compelling evidence that the proposed settlement is in the best interests of the Settlement Class.

## 2.      Risks Relating to Establishing Liability

Although Plaintiffs believe that they would be able to prevail at trial, liability was not a foregone conclusion.  Defendants have argued that certain of the most important facts that Plaintiffs assert were misrepresented or concealed by Defendants were known to the public or could have been discerned from information that was known, therefore, they could establish a truth-on-the-market defense**.**  *See, e.g.*, *In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991) (defendant's failure to disclose material information may be excused where the information was made credibly available to the market by other sources).  For example, Defendants argue that the market was aware that they had assumed a 40 percent surgery avoidance rate for placebo patients in the PAO trial, even

though Defendants stated publicly that they were assuming a 10% placebo surgery avoidance rate "to be conservative."[6]   Further, Defendants have argued and would argue that the 40% placebo surgery avoidance rate Nuvelo internally assumed for planning purposes for the PAO trial was not material to investors.   Defendants would argue that they actually assumed a much lower placebo surgery avoidance rate, that they assumed the results of the trial *would* be statistically significant even with a higher placebo success rate, and that investors only cared about whether the trial was adequately "powered" (referring to the size of the treatment groups) as it relates to statistical significance.   While Plaintiffs believe that Defendants' statements materially misled investors, there is certainly a risk that a jury would be confused about the significance of the placebo risk and its relationship to the true rate of the performance of alfimeprase in the first PAO trial.

Defendants have also argued that evidence of scienter is weak, noting – correctly – that only one of the Defendants sold any stock during the Settlement Class Period, and his sales were tied to "use-or-lose" options.   Again, Plaintiffs believe that the evidence that Defendants were aware of the specific concealed facts at issue should be sufficient to establish scienter; however, there is certainly a risk that a jury would not conclude that Defendants' conduct "present[ed] a danger of misleading buyers or sellers that [was] either known to the defendant or [was] so obvious that the actor must have been aware of it."   *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 976 (9th Cir. 1999).

### 3.       Risks in Establishing Loss Causation and Damages

There are several risks in this case in establishing loss causation and quantifying damages. Plaintiffs rely upon Defendants' December 11, 2006 statements that the stringent statistical standard was a cause of the failure of the CO trial, and the high rate of avoidance of open surgery in the

---

[6] Defendants would point to the report of the single securities analyst who was aware that Defendants' assumed a 40% rate of avoidance of surgery of placebo patients in planning the PAO trial, but stated in his report that, in any case, the Company actually believed that only 20% of such patients would avoid open surgery, and that the rate of alfimeprase patients who would avoid open surgery would be so much greater that the results would nevertheless be statistically significant. As a result, the analyst was convinced that the trial would be successful.

placebo group was a cause of the failure of the PAO trial.  However, Defendants will argue that other factors caused the failure of the trials, and therefore, of the losses of the Settlement Class.[7]

Furthermore, as the Court noted, Plaintiffs claim that Nuvelo's stock was artificially inflated during the Settlement Class Period by Defendants' false or misleading statements, and that the artificial inflation was removed from the stock when the truth was revealed to the market on December 11, 2006, was supported by the increase in the stock's price on the first day of the Settlement Class Period (January 5, 2006) and the massive decline that occurred on December 11, 2006.  *In re Nuvelo, Inc. Sec. Litig.,* 668 F. Supp. 2d at 1224-25.  As for the stock increase on January 5, 2006, the Court found that Plaintiffs' allegations of a "synergistic effect" of the announcement that Bayer AG had become Nuvelo's development partner for alfimeprase providing financing for the development of the drug with the existing fraudulent information in the market "arguably renders the SAC's loss causation allegations plausible-at least for pleading purposes." *Id.* at 1227.  Actually linking the January 5 stock price increase and the concealed facts about the alfimeprase trials, however, would involve a battle of experts, the outcome of which is uncertain.

---

[7] The PAO trial failed because the rate of avoidance of open surgery in the alfimeprase group was not sufficiently higher than in the placebo group for the results to be statistically significant.  That was a function of the rate in the placebo group, but it was also a function of the rate in the alfimeprase group.  In a March 2010 article in the Journal of Vascular Surgery authored by physicians who participated in the Phase 3 PAO trial discussing the conduct and results of that trial expressed considerable surprise at the failure of the trial, and noted that in the trial alfimeprase had been successful in causing patients with large clots to avoid open surgery.  Based on this observation, those doctors concluded that the success was due to the longer exposure of those patients to alfimeprase suggesting that a different method of administration might improve the results, and that the results were not due to a shortcoming in the efficacy of the drug.  There can be little doubt that Defendants will argue that the inadequate exposure of alfimeprase to the clots in patients with smaller clots was the important reason for the failure of the PAO trial.  While Plaintiffs do not believe that this argument should successfully defeat their proof of loss causation, there can be little doubt that it would cause confusion.  Defendants may also be expected to argue that the CO trial failed due to an unexpectedly high rate of catheter clearance in the placebo group as well as an unexpectedly high rate of non-clot obstruction of catheters in the alfimeprase group.  While Plaintiffs contend that these issues would not have mattered had the normal statistical standard applied, these assertions would clearly have lead to confusion.

1    The same uncertainty exists as to establishing loss causation on the December 11, 2006 stock

2  price drop.  As stated in the Court's ruling on Defendants' motion to dismiss the Complaint:

3        The SAC alleges that "[h]ad defendants corrected their false statements and
         made meaningful disclosure of the risks prior to or during the Class Period,
4        Nuvelo's securities would not have traded as high as they did during the Class
         Period, or would have declined sooner than they did following the end of the
5        Class Period." Doc. # 76 at 83. The SAC alleges that defendants concealed
         their knowledge – not that the phase 3 trials would certainly fail – but that
6        they included significant undisclosed risks. The disclosures on December 11
         that the trials failed, therefore, revealed to the market not only the concealed
7        risks of the trials but also that those risks had led to the failure of the trials.
         The drop in the stock price can be attributed in part to both disclosures. And,
8        as defendants argue, it is not clear on the face of the SAC the exact amount to
         apportion to each of these disclosures.
9
10
11  *In re Nuvelo, Inc. Sec. Litig.,* 668 F. Supp. 2d. at 1228.  While the Court found that the Complaint

12  sufficiently alleged that a "substantial" amount of the December 11, 2006 stock price drop was

13  attributable to the concealed fraud, proof of this fact at trial would be more difficult.

14    More importantly, even proof that there was a "substantial" connection between the alleged

15  fraud and the December 11, 2006 stock drop would not be sufficient to establish the quantum of

16  damages.  *See Cohn v. Nelson,* 375 F. Supp. 2d 844, 848 (E.D. Mo. 2005); *see also Robbins v. Koger*

17  *Properties, Inc.,* 116 F.3d 1441, 1447 (11th Cir. 1997).  Isolating and removing extraneous causes of

18  the stock drop would be difficult.  Expert damage studies have been found insufficient on just such

19  grounds.  Thus, in *In re Williams Sec. Litig.,* No. 02-cv-072-SPF-FHM, 2007 WL 2007987 (N.D.

20  Okla. July 6, 2007)*,* a court found it could not ascribe a "rough portion" of the loss to defendants'

21  misstatements where plaintiff's expert failed to differentiate between "losses rooted in causes

22  cognizable under loss causation doctrine, on one hand, and, on the other hand, losses attributable to

23  industry-specific stresses, the meltdown in the telecommunications sector, and other negative

24  developments unrelated to the alleged fraud."  2007 WL 2007987, at *62, *aff'd,* 558 F.3d 1130 (10th

25
26  Cir. 2009).  Here as well, the parties would inevitably have a "battle of experts" as to whether it was
27
28

1   possible to "isolate and remove" the extraneous factors from the stock price drop, and this would not

2   be an easy task.[8]  Loss causation and damages issues thus, carried real risks for the Settlement Class.

3   **C.  The Proposed Settlement Has "No Obvious Deficiencies"**

4       The Settlement "has no obvious deficiencies," nor does it "improperly grant preferential

5   treatment to class representatives or segments of the class." *Young,* 2006 WL 3050861, at *5.  Lead

6   Plaintiffs do not receive "unduly preferential treatment;" they are treated the same as every other

7   Settlement Class Member, and the amount of their recovery will be solely based on the operation of

8   the same Plan of Allocation that applies to every Settlement Class Member.[9]

9       "In general, a plan of allocation that reimburses class members based on the type and extent

10  of their injuries is reasonable." *In re IKON Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 184

11  (E.D. Pa. 2000).  Under the Plan of Allocation set forth in the Proposed Notice, all Settlement Class

12  Members are going to share the Settlement Fund on a *pro rata* basis.[10]  For common stock holders,

13  the Plan of Allocation limits recovery to those persons who purchased shares during the Settlement

14  Class Period and held those shares at the end of trading on December 8, 2006, in accordance with the

---

[8] An expert would need to assess how the market would have valued the stock prior to December 11, 2006, if it had known the true risks, but did *not* know that these risks *would* cause the trials to fail.  It is in this context that Bayer's decision to invest millions in Nuvelo would be the most damaging.  Plaintiffs would need to show that that Bayer's investment was based on inadequate due diligence and that Nuvelo was successful in concealing the key information from the pharmaceutical giant.

[9] In addition, Lead Plaintiffs may apply to the Court for compensation for their services on behalf of the Settlement Class.  Such awards are specifically permitted by the PSLRA, 15 U.S.C. § 78u-4(a)(4), and are often granted.  *See, e.g., In re CV Therapeutics, Inc., Sec. Litig.,* No. C 03-3709 SI, 2007 WL 1033478, at *2 (N.D. Cal. April 4, 2007); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980, 1000 (D. Minn. 2005).  The granting of any such award is at the discretion of the Court, and the Settlement is not in any way contingent upon approval of such awards.  *See* Stipulation for Settlement, paragraph 7.4.

[10] "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Techs., Inc.,* No. C-04-2297 SC, 2007 WL 4293467, at *7 (N.D. Cal. Dec. 6, 2007) (quoting *In re Oracle Sec. Litig.,* No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 16, 1994), and citing *Class Pls. v. Seattle,* 955 F.2d at 1284-85).

1    loss causation requirements of *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005) and this

2    Court's ruling on the second motion to dismiss, which limited Plaintiffs' claims to the stock drop

3    which occurred on December 11, 2006.  The recognized loss for common stock holders is based on

4    the amount that the stock price declined on December 11, 2006

5            For options purchasers, the Plan of Allocation limits recovery to purchasers of call options

6    whose options remained open at the end of the Settlement Class Period on December 8, 2006.

7    Purchasers of put options could not have been injured by the decline in the stock price that resulted

8    from the alleged fraud, nor could Settlement Class Members whose call options had been exercised

9    or had expired prior to December 8, 2006.  Based on the analysis of Plaintiffs' damages expert, Dr.

10   Scott Hakala, the recognized loss for call option purchasers is the lesser of either: (a) the purchase

11   price of those call options or (b) the closing market bid price for such calls on December 8, 2006.[11]

12           Finally, Courts also evaluate whether the Settlement provides for excessive compensation to

13   Plaintiff's Counsel.  *See, e.g., NVIDIA,* 2008 WL 5382544, at *3.   In this case, the proposed

14   Settlement provides that Counsel may seek an award of attorneys' fees not to exceed 30 percent of

15   the amount of the Settlement, based on a fee application which will be prepared and filed with the

16   Court prior to the final hearing.  Awards of greater percentages have been made in numerous similar

17   cases.  *In re Enron,* 586 F. Supp. 2d at 775-76 (citing studies finding that average attorneys fee

18   awards in securities class actions are 32 percent of the settlement).  In addition, the Settlement does

19   not depend upon the fee award; the Court has discretion to approve the Settlement while accepting,

20   rejecting, or modifying Plaintiff's Counsel's fee application.  Thus, the fairness of the Settlement

21   can, and should, be judged independently from the question of fees.

---

[11] Dr. Hakala concluded that call option purchasers would have suffered recoverable losses essentially equal to the purchase price of the options after evaluating commonly used factors such as the implied volatility of options on December 8 and 11, 2006, the risk-free interest rate, and the decline in share price on December 11, 2006.

## II.    CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER

Plaintiffs filed a motion on December 15, 2010, which requested that the Court certify a class pursuant to Rule 23(b)(3), appoint Plaintiffs as Class Representatives, appoint Izard Nobel LLP and Berger & Montague, P.C. as Class Counsel and Robbins Geller Rudman and Dowd LLP as Liaison Counsel pursuant to Rule 23(g).  That December 15, 2010 Motion remains pending and the deadline for Defendants to oppose the motion had not yet passed when the parties reached the Settlement. For purposes of settlement only, Defendants have indicated that they do not object to the Court granting the pending Class Certification motion with respect to a Settlement Class, while reserving their right to object to class certification in the event that the Settlement is not approved. Accordingly, and for the reasons set forth in Plaintiffs' December 15, 2010 Motion and supporting materials, Plaintiffs request that the Court preliminarily certify the following Settlement Class:

> All Persons who purchased publicly-traded Nuvelo common stock or call options between January 5, 2006 and December 8, 2006, inclusive, and who suffered losses on those purchases.  Excluded from the Settlement Class are Defendants, officers and directors of Nuvelo, members of their immediate families and their legal representatives, heirs, successors and assigns, and any entity in which Defendants have or had a controlling interest.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice of Pendency of Proposed Settlement of Class Action.

Furthermore, Plaintiffs request that the Court appoint Juan Pablo Cabrera, Frank C. and Patricia A. Petronis, and Todd A. and Amy A. Stephens as Settlement Class Representatives, appoint Berger & Montague, P.C. and Izard Nobel, LLP as Settlement Class Counsel, and appoint Robbins Geller Rudman & Dowd, LLP as Liaison Counsel.

## III.    THE PROPOSED SETTLEMENT NOTICE SATISFIES RULES 23(d) AND (e) AND DUE PROCESS REQUIREMENTS

Settlement Class Counsel proposes that mailed and published notice be given in the form of the Notice and Summary Notice, attached as Exhibits A and B to the proposed Preliminary Approval Order.  Notice to the Settlement Class in the form and in the manner set forth in the proposed

1   Preliminary Approval Order will fulfill any requirements of due process that may apply, comply

2   with the Federal Rules of Civil Procedure, and alert and inform Settlement Class Members of the

3   Settlement and their opportunity to appear and be heard at the Fairness Hearing.

4        Notice must be "reasonably calculated, under all the circumstances, to apprise interested

5   parties of the pendency of the action and afford them an opportunity to present their objections."

6   *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *Mendoza v. Tucson Sch.*

7   *Dist. No. 1,* 623 F.2d 1338, 1352 (9th Cir. 1980).  Plaintiffs propose to give interested parties notice

8   by first-class mail, addressed to all Settlement Class Members who can reasonably be identified and

9   located, and by publication notice in the National Edition of *Investors Business Daily* and

10  electronically over *PRNewswire* or *Business Wire*.   In addition, Plaintiffs propose to make

11  information concerning the Settlement, including the Notice, the preliminary approval order, and

12  other pertinent documents, available on a dedicated website.  Courts have routinely approved similar

13  notice arrangements.  *See, e.g., In re OCA, Inc. Sec. and Derivative Litig.,* No. 05-2165, 2008 WL

14  4681369, at *16 (E.D. La. Oct. 17, 2008) ("direct mailing of notice, along with publication of

15  Summary Notice in print and on the web, is reasonably calculated to apprise class members of the

16  settlement"); *In re Enron Sec. and ERISA Litig.,* No. H-01-3624, 2003 WL 22494413, at *3 (S.D.

17  Tex. July 24, 2003).  Moreover, Plaintiffs have proposed a schedule which gives Settlement Class

18  Members ample opportunity to review all of the papers filed in support of final approval of the

19  Settlement and of the requests for attorneys' fees, costs and expenses and for awards to Lead

20  Plaintiffs before having to decide whether to file objections or opt-out of the settlement, as required

21  by the Ninth Circuit's recent decision in *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988,

22

23

24

25

26

27

28

993-94 (9th Cir. 2010).  The content of the notice also meets all of the requirements of both the PSLRA and Federal Rule 23.[12]

## IV.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, Plaintiffs request that the Court set the date of the final settlement hearing.  Plaintiffs anticipate that they will need approximately ten weeks from the date of Preliminary Approval to the date of the final settlement hearing. Accordingly, if the Court grants preliminary approval of the proposed Settlement by April 1, 2011, Plaintiff's counsel respectfully suggests that the Court schedule the Final Hearing Date for the motion calendar on June 10, 2011.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court (1) preliminarily approve the Settlement; (2) schedule date for the final hearing on the fairness of the Settlement; (3) preliminarily certify a Settlement Class; (4) appoint Lead and Liaison Counsel for the Settlement Class; and (5) direct the dissemination of notice of the Settlement and the Final Hearing Date to the members of the Settlement Class.

---

[12] Specifically, the Notice "clearly and concisely state[s] in plain, easily understood language," in accordance with Rule 23(c)(2)(B):  the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion, and the binding effect of a class judgment on members under Rule 23(c)(3).  Additionally, in accordance with the PSLRA, 15 U.S.C. § 78u-4(a)(7), the Notice also provides an up-front summary which includes:  a statement identifying the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis, a statement of the potential outcome of case, including a summary of the issues on which the parties disagreed (as the parties did not agree on the average amount of damages per share that would be recoverable if plaintiff prevailed on each claim); a statement of attorneys' fees or costs sought, including the amount of such fees and costs determined on an average per share basis and a brief explanation supporting the fees and costs sought; the name, telephone number, and address of counsel for the plaintiff class who will be reasonably available to answer questions from class members; and a "brief statement explaining the reasons why the parties are proposing the settlement."

1

2   DATED:  February 25, 2011                    Respectfully submitted,

3                                                IZARD NOBEL LLP
                                                 JEFFREY S. NOBEL
4                                                MARK P. KINDALL, Bar No. 138703
                                                 NANCY A. KULESA
5

6

7                                                _____
                                                        /s/ Mark P. Kindall
8                                                       MARK P. KINDALL

9                                                29 South Main Street, Suite 215
                                                 West Hartford, CT  06107
10                                               Telephone:  860/493-6292
                                                 860/493-6290 (fax)
11

12                                               Co-Lead Counsel for Plaintiffs

13

14  BERGER & MONTAGUE, P.C.
    SHERRIE R. SAVETT
15  CAROLE A. BRODERICK
    PHYLLIS M. PARKER
16  JACOB M. POLAKOFF
    1622 Locust Street
17  Philadelphia, PA  19103
    Telephone:  215/875-3000
18  215/875-4604 (fax)

19  Co-Lead Counsel for Plaintiffs

20

21  ROBBINS GELLER RUDMAN
      & DOWD LLP
22  DARREN J. ROBBINS
    JOY A BULL
23  DENNIS J. HERMAN
    ELI R. GREENSTEIN
24  S. ASHAR AHMED
    Post Montgomery Center
25  One Montgomery Street, Suite 1800
    San Francisco, CA  94104
26  Telephone:  415/288-4545
    415/288-4534 (fax)

27
    Liaison Counsel for Plaintiffs
28

1

<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on February 25, 2011, I electronically filed the foregoing with the Clerk

3  of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4  addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5  mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6  participants indicated on the attached Manual Notice List.

7      I further certify that I caused this document to be forwarded to the following Designated

8  Internet Site at:  http://securities.stanford.edu.

9      I certify under penalty of perjury under the laws of the United States of America that the

10  foregoing is true and correct.  Executed on February 25, 2011.

11

12                  /s/ Mark P. Kindall
                Mark P. Kindall

13

14                  IZARD NOBEL LLP
                29 South Main Street, Suite 215

15                  West Hartford, CT  06107
                Telephone:  860/493-6292

16                  860/493-6290 (fax)

17                  E-mail: firm@izardnobel.com

18

19

20  # Mailing Information for a Case 3:07-cv-04056-CRB

21  ## Electronic Mail Notice List

22

23  The following are those who are currently on the list to receive e-mail notices for this case.

24  - **Carole A. Broderick**
    cbroderick@bm.net
25  - **Eli Greenstein**
    Elig@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.co

26     m

27

28

- **Dennis J. Herman**
  dennish@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,aahmed@rgrdlaw.com,triciam@rgrdlaw.com,e_file_sf@rgrdlaw.com
- **Jeffrey Michael Kaban**
  kabanjm@cooley.com,kramerns@cooley.com
- **Christopher J. Keller**
  ckeller@labaton.com,cchan@labaton.com,electroniccasefiling@labaton.com
- **Nancy A. Kulesa**
  nkulesa@izardnobel.com
- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com
- **Jeffrey S. Nobel**
  jnobel@izardnobel.com
- **Phyllis Maza Parker**
  pparker@bm.net,emagnus@bm.net
- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com
- **Barbara A Podell**
  bpodell@bm.net,emagnus@bm.net
- **Jessica Valenzuela Santamaria**
  jsantamaria@cooley.com,galancr@cooley.com
- **Sherrie R. Savett**
  ssavett@bm.net
- **Evan Jason Smith**
  esmith@brodsky-smith.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Mario Alba
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road
Suite 200
Melville, NY 11747

Nicolette Tropiano
Schiffrin Barroway Topaz & Kessler LLP
280 King of Prussia Road
Radnor, PA 19087
```