IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: NUVELO, INC. SECURITIES LITIGATION | No. C 07-04056 CRB<br><br>**ORDER AWARDING ATTORNEYS' FEES** |

Plaintiffs brought this securities fraud class action against Defendant Nuvelo, Inc., alleging that Nuvelo, a biopharmaceutical company, artificially inflated its stock price by misrepresenting the progress of certain drug trials. After four years of litigation, the parties settled the dispute, creating an $8.9 million settlement fund.

On June 20, 2011, the Court granted final approval of the settlement, dkt. 165, and of the plan of allocation, dkt. 166, as well as Plaintiffs' requests for attorneys' expenses and Lead Plaintiffs' costs and expenses, dkt. 167. The Court, however, reserved ruling on Plaintiffs' motion for attorneys' fees, pending receipt of a final estimated cost of fund administration. Dkt. 167.

Plaintiffs have now provided this estimate. Dkt. 169. The Court hereby finds that 30% of the net settlement fund ($2,490,737.91) is an appropriate fee award in this case.[1]

---

[1] Counsel requested that the Court award attorneys' fees based on the gross settlement. See Pl. Decl. (dkt. 159-3) ¶ 65. For the reasons stated in its prior Order regarding attorneys' fees, the Court finds it appropriate to award attorneys' fees based on the net settlement. See Fees Order (dkt. 167) at 3 n.1.

Counsel have indicated that the total fees and costs relating to the notice and administration process will not exceed $225,000. See Bull Decl. (dkt. 169) at 2. The net settlement fund is therefore: the gross settlement fund of $8,916,666.70 less attorneys' expenses ($366,156.09), Lead Plaintiffs' costs

## I. DISCUSSION

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate and reasonable.'" Staton v. Boeing Co., 327 F.3d 938, 964 (9th Cir. 2003) (internal citation omitted).

In "common fund cases," such as the present action, a court has discretion to award attorneys' fees as either a percentage of such common fund or by using the lodestar method. Id. at 967-968. The Ninth Circuit's "benchmark" for attorneys' fees in common fund class actions is 25% of the common fund. Id. at 968. "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002).

Vizcaino outlines a number of factors that the Court may consider in setting an appropriate fee: (1) whether counsel achieved exceptional results; (2) the degree of risk assumed by counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) whether the fee lies above or below the market rate; and (5) the length of time counsel represented the class on a contingency basis. Id. at 1048-1050. Additional factors may include (6) counsel's experience and skill, (7) the complexity of the issues, (8) the reaction of the class, and (9) a comparison with counsel's loadstar. In re Heritage Bond Litigation, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005).

Applying the relevant factors, the Court finds that the settlement warrants an upward adjustment of the benchmark to 30%.

//

//

---

and expenses ($21,692), Frank C. Petronis's out-of-pocket expenses ($1,358.92), and total fund administration expenses ($225,000), equalling $8,302,459.69. 30% of the net fund equals $2,490,737.91.

### A. Results Achieved

Considering (1) the outstanding loss causation and liability issues in this case (discussed in more detail in Judge Walker's 2009 Order, see In re Nuvelo, Inc. Securities Litigation, 668 F. Supp. 2d 1217, 1227 (N.D. Cal. 2009)), and (2) Nuvelo's limited resources at the time of settlement, counsel obtained a sizable recovery for the class. See Fees Mot. (dkt. 160) at 4 (arguing that the settlement "maximizes the recovery that Lead Plaintiffs could obtain").

The Court notes counsels' estimate that Plaintiffs suffered a $440 million loss as a result of the stock's collapse. However, the misfortune of Nuvelo's near-insolvency significantly limited what counsel could obtain. The Court accepts counsels' assertions that they first discovered Nuvelo's precarious financial condition only after three years of litigation. See Pl. Decl. (dkt. 159-3) ¶ 30. The Court further accepts counsels' assertions that they continued litigating thereafter, for a year until settlement, in order to gather enough evidence to "convince" Nuvelo to settle, id. ¶ 31, and to pursue an end (conclusion of the litigation) that they deemed socially valuable.

In light of "all of [these] circumstances of the case," Vizcaino, 290 F.3d at 1048, the Court finds that counsel obtained quality results. This factor supports an upward adjustment of the benchmark.

### B. Litigation Risk

Considering the complexities of this case and the significant risk of non-payment, the Court finds that counsel assumed a good deal of risk in bringing this suit. This factor supports an upward adjustment of the benchmark.

### C. Non-monetary Relief

Counsel did not generate benefits beyond the cash settlement fund.

### D. Percentage Rate Relative to Market Rate

30% reasonably compares to other awards for a $10M settlement. In re Activision Securities Litigation, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) contains an exhaustive list of cases that suggest the Ninth Circuit's benchmark "is at approximately 30% of the fund." In

1 re Heritage Bond, 2005 WL 1594403, at *19, n.14 also collects a series of Ninth Circuit, and
2 out-of-circuit, decisions that award between 30% and 33%.

3 Plaintiffs also cite Cicero v. DirectTV, No. 07-1182, 2010 WL 2991486, at *6 (C.D.
4 Cal. July 27, 2010) ("[C]ase law surveys suggest that 50% is the upper limit, with 30–50%
5 commonly being awarded in case [*sic*] in which the common fund is relatively small.") and
6 Craft v County of San Bernardino, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (citing Van
7 Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 297–98 (N.D. Cal. 1995)) ("Cases of
8 under $10 Million will often result in fees above 25%."). This factor supports an upward
9 adjustment of the benchmark.

10 **E.   The Lenth of Time Counsel Represented Class on a Contingency Basis**

11 Counsel represented Plaintiffs on a contingency basis for four years, Pl. Decl. (dkt.
12 159-3) ¶ 70, during which time they conducted extensive pre-discovery investigations,
13 negotiations over discovery, and discovery review of five million pages of documents, Fees
14 Mot. (dkt. 160) at 5-6. It is an established practice to reward attorneys who assume
15 representation on a contingent basis with an enhanced fee to compensate them for the risk
16 that they might be paid nothing at all. See In re Washington Pub. Power Supply Sys. Sec.
17 Litig., 19 F.3d 1291, 1299 (9th Cir. 1994). This practice encourages the legal profession to
18 assume such a risk and promotes competent representation for plaintiffs who could not
19 otherwise hire an attorney. Id. This factor supports an upward adjustment of the benchmark.

20 **F.   Counsel's Experience and Skill**

21 Counsel possess significant experience in securities litigation. See Pl. Decl., Ex. 2-4
22 (dkt 159-4 and 159-5) (containing the firms' resumes). This factor supports an upward
23 adjustment of the benchmark.

24 **G.   The Complexity of the Issues**

25 As stated above, this case presented especially complex issues. This factor supports
26 an upward adjustment of the benchmark.

27 //
28 //
//

4

### H. Reaction of the Class

Only one class member has objected to the 30% award, which objection counsel have addressed.[2] The Court considers this a strong, positive response from the class, supporting an upward adjustment of the benchmark.

### I. Lodestar Cross-Check

Lastly, an award of 30% of the net settlement fund falls well below the lodestar of almost $7 million. Fees Mot. (dkt. 160) at 10. This factor supports an upward adjustment of the benchmark. See, e.g., Van Vranken, 901 F. Supp. at 298 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.").

\* \* \*

On balance, the Court finds that the aforementioned factors support a fee award of 30% of the net settlement fund.

## II. CONCLUSION

The Court hereby awards counsel $2,490,737.91 in attorneys' fees, plus any interest earned thereon, to be paid to Lead Counsel from the net settlement fund forthwith, subject to the terms, conditions, and obligations of the parties' Stipulation and in particular ¶ 6.2 thereof, which terms, conditions, and obligations are incorporated therein.

**IT IS SO ORDERED.**

Dated: July 6, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[2] This claimant objected to the award of attorneys' fees and expenses "with[out] evidence of hours devoted to work performed on the case." Obj. (dkt. 161). He asked, "In the absence of evidence that the requested amount is legitimately earned can the Judge approve the award?" Id. Plaintiffs have, however, provided affidavits itemizing attorney hours and expenses of the three firms involved in this litigation. See Pl. Decl. (dkt 159-4 and 159-5), Ex. 2-4. Furthermore, counsel filed a Declaration stating that it sent a copy of the itemized expenses to the objector, who received the materials, thanked counsel for sending them, "and indicated that he might not have time to review the materials in detail." Kindall Decl. (dkt. 163-1) ¶¶ 5-6.